**UNITED STATES of America, Appellee,**

v.

**Mark Y. SKINNER and William C. Morrison, Appellants.**

**Nos. CR96–258D, CR96–615D.**

United States District Court,
W.D. Washington.

May 16, 1997.

Margaret M. Smith, Federal Public Defender's Office, Seattle, WA, for Mark Y. Skinner.

Laurie R. Gibbens, U.S. Attorney's Office, Seattle, WA, Christopher J. Corvo, Judge Advocate General's Corps, Naval Legal Service Office, Bremerton, WA, for U.S.

Thomas W. Hillier, II, Federal Public Defender's Office, Seattle, WA, for William C. Morrison.

## ORDER AFFIRMING MAGISTRATE JUDGE

DIMMICK, Chief Judge.

THIS MATTER comes before the Court on appeal from the order of Magistrate Judge John L. Weinberg denying Appellants' motion for summary judgment. Having considered Appellants' brief and supporting materials and the response by the United States, the Court hereby affirms the decision of the magistrate judge.[1]

### I.

Appellants both were charged with driving under the influence of alcohol ("DUI") on Bremerton Naval Base property in violation of RCW 46.61.502(1)(a), which makes it a crime to have a breath- or blood-alcohol concentration (BAC) of 0.10 percent or higher within two hours of driving, and 18 U.S.C. §§ 7 and 13, which make it a federal crime for a person on a military base to commit a violation of the criminal law of the state in which the base is located. Appellants moved to dismiss the information, arguing that the DUI provision under which they were charged is unconstitutional. The magistrate judge denied the motion, and the defendants appealed pursuant to Local Rules MJR 12(a), Fed.R.Crim.P. 58(g)(2)(A), Fed. R.App. P. 5(a), and 28 U.S.C. § 1292(b).[2]

1. The Court finds that the parties have briefed the issues well and that the appeal is appropriately resolved without oral argument.

2. The Court notes that the Magistrate Judge's order did not contain the language of 28 U.S.C. § 1292(b) stating that it concerned "a controlling question of law as to which there is substantial ground for difference of opinion and that an

### II.

Appellants challenge the following provision of RCW 46.61.502:

(1) A person is guilty of driving while under the influence of intoxicating liquor ... if the person drives a vehicle within this state:

(a) And the person has, within two hours after driving, an alcohol concentration of 0.10 or higher as shown by analysis of the person's breath or blood. ...

Appellants argue that this "two-hour rule" (1) exceeds the legitimate police powers of the state; (2) creates an impermissible mandatory presumption; and (3) is void for vagueness because (a) it does not define the criminal conduct so that people can understand what conduct is prohibited and (b) it encourages arbitrary enforcement, all in violation of the due process guarantees of the Fifth and Fourteenth Amendments to the United States Constitution. Although a few of these arguments have been accepted by at least one state supreme court, *see Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996), and one Washington State Supreme Court justice, *see State v. Crediford,* 130 Wash.2d 747, 927 P.2d 1129 (1996) (Sanders, J., concurring in the result), this Court is not persuaded.

### A.

The two-hour rule does not exceed the State's police powers. It is well established that a state's action violates due process only where it is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). A state's interest in public safety includes a "paramount interest ... in preserving the safety

immediate appeal from the order may materially advance the ultimate termination of the litigation." Although such language technically is required, *see* Fed. R.App. P. 5(a); Fed.R.Crim.P. 58(g)(1)–(2), the parties, the Magistrate Judge, and this Court all seem to agree that the standard has been met.

of its public highways [by] ... removing drunken drivers from the[ ] highways." *See Mackey v. Montrym,* 443 U.S. 1, 17, 99 S.Ct. 2612, 2620, 61 L.Ed.2d 321 (1979).

Appellants argue that the two-hour rule exceeds the State's police powers because it could support a criminal conviction of persons who were not "intoxicated" at the time they actually operated the motor vehicle. This is because a person's BAC increases for a time after consumption while the alcohol is absorbed into the bloodstream, before it begins to decrease. Thus, it is possible for a person to have a BAC of 0.10 percent within two hours after driving even if his BAC was below 0.10 percent at the time he was driving.

■ Even so, it cannot be said that the two-hour rule does not bear a substantial relation to the State's paramount interest in preserving the safety of its roads and highways. To argue that the rule is unconstitutional for effectively making "legal" behavior illegal is implicitly to argue that driving with a 0.10 percent BAC or higher is the only DUI-related behavior that the State can prohibit legitimately.[3] In other words, Appellants' argument rests on the false premise

that only driving with a BAC of 0.10 percent or higher threatens the public safety. To the contrary, the legislature has decided that driving after having consumed enough alcohol to cause one's BAC to rise to 0.10 percent within two hours after driving is dangerous to the public. As the Washington State Supreme Court has put it,

> the Legislature did not exceed the police power of the State when it enacted a statute that essentially says that a person whose blood or breath alcohol concentration is 0.10 percent or greater should not have been driving an automobile within the previous two hours, regardless of what the driver's blood or breath alcohol concentration might have been at the time of driving.

*State v. Crediford,* 130 Wash.2d 747, 744–55, 927 P.2d 1129, 1133 (1996). The 0.10 percent BAC is not some magical bright line between safely drunk and unsafely drunk, and the fact that driving with less than a 0.10 percent BAC may prove to be criminal under the two-hour rule does not mean that the rule is arbitrary or not substantially related to public safety.[4]

3. The authorities that Appellants rely upon make the same error. Justice Sanders, for instance, reasoned that the two-hour rule, as construed by the majority in *Crediford,* "criminalize[s] drunkenness at the time one takes the test, but not necessarily when one drives." 130 Wash.2d at 765, 927 P.2d 1129. Such reasoning presumes that "drunkenness" means a BAC of 0.10 percent or higher. Similarly, the Supreme Court of the Commonwealth of Pennsylvania held a similar two-hour rule unconstitutional because, "without requiring any proof that the person actually exceeded the legal limit of .10% at the time of driving, the statute sweeps unnecessarily broadly into activity which has not been declared unlawful ..., that is, operating a motor vehicle with a BAC below .10%." *Commonwealth v. Barud,* 545 Pa. 297, 308, 681 A.2d 162, 167 (1996).

4. Of course, somewhere there is a limit to the State's police power in this regard. Supposing, for the sake of argument, that the State could not make it a crime to drive with a 0.001 percent BAC in the name of preventing drunk driving, Appellants might have come forward with facts showing that a large percentage of the people charged under the two-hour rule likely had driven with a BAC well below 0.10 percent and clearly too low to impair their driving. But the

bulk of Appellants evidence basically shows that alcohol is absorbed into and eliminated from the bloodstream at rates that vary depending upon the person and even within the same person at different times. The fact that it may take some people over two hours after their last drink to reach peak alcohol concentration does not show that those people, having consumed enough alcohol to reach 0.10 percent BAC two hours after driving, were not impaired when driving. Appellants' own evidence suggests that a person's BAC reaches over 80% of its peak within five minutes after consumption and over 90% if its peak within forty-five minutes of consumption. *See* A.W. Jones & A. Neri, *Evaluation of Blood–Ethanol Profiles After Consumption of Alcohol, Together with a Large Meal,* 24 Canadian Society Forensic Science Journal 165, 170 (1991). Given that a statute is presumed to be a valid exercise of state power, *see, e.g., Bibb v. Navajo Freight Lines,* 359 U.S. 520, 529, 79 S.Ct. 962, 967–68, 3 L.Ed.2d 1003 (1959), and is to be upheld if there are any facts, either known or reasonably assumed, supporting it, *see United States v. Carolene Prods. Co.,* 304 U.S. 144, 154, 58 S.Ct. 778, 784–85, 82 L.Ed. 1234 (1938), Appellants have failed to meet their burden of showing that Washington State's two-hour rule is an unconstitutional exercise of police power.

## B.

The two-hour rule does not create a mandatory presumption. A presumption is an evidentiary device allowing "the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts." *County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 156, 99 S.Ct. 2213, 2224, 60 L.Ed.2d 777 (1979). In criminal cases, a presumption must not undermine the fact finder's responsibility to find each element of a crime beyond a reasonable doubt. *Id.*

Appellants argue that the two-hour rule creates a presumption that, if a defendant is found to have had a 0.10 percent BAC within two hours after driving, he must have had at least a 0.10 percent BAC at the time he was driving. According to this argument, the elemental fact that a defendant had a 0.10 percent BAC while driving is presumed from the evidentiary fact that a defendant had a 0.10 percent BAC within two hours after driving. Such a presumption, Appellants argue, undermines the jury's responsibility to find, and the prosecutor's obligation to prove, each element of the crime beyond a reasonable doubt.

Again, Appellants' argument rests upon a false premise. The argument incorrectly assumes that driving with a BAC of 0.10 percent or higher is necessarily an element of the crime. While Appellants are correct that the statute is intended to correct driving under the influence of alcohol, the legislature has attempted to correct such behavior by making it a crime to drive after consuming enough alcohol to cause a person's BAC to be 0.10 percent within two hours after driving, regardless of the person's actual BAC at the time of driving. The elemental fact to be proven therefore is that a person had a 0.10 percent BAC within two hours after driving,

and any conclusion drawn from proof of this fact is irrelevant.

## C.

Under the void-for-vagueness doctrine, a criminal statute violates due process if it fails to define the offense (1) with sufficient definiteness that ordinary people can understand what conduct is prohibited and (2) in a manner that does not encourage arbitrary and discriminatory enforcement. *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Appellants argue that the two-hour rule violates both standards.

### 1.

The two-hour rule provides adequate notice of the prohibited conduct. A statute violates due process for failing to give adequate notice when it "forbids ... the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning." *United States v. Lanier,* ——— U.S. ———, ———, 117 S.Ct. 1219, 1225, 137 L.Ed.2d 432 (1997). Because it is assumed that people are able to choose between lawful and unlawful conduct, it is necessary "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that [the person] may act accordingly." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). In the case of a statute that does not affect First Amendment rights, such as the two-hour rule, due process challenges are considered on an as-applied basis, so any "[o]bjections to vagueness ... may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988).[5]

---

**5.** The United States raises a standing argument based on this rule. The United States argues that, because the two-hour rule may be challenged only on an as-applied basis and Appellants have not shown that they are in the possible class of defendants who drove with a BAC under 0.10 percent but had a BAC of over 0.10 percent within two hours, the rule as applied to Appellants does not violate the Constitution, and Appellants have no standing to bring a facial

challenge. Appellants did however, have BAC readings of over 0.10 percent and were charged under the two-hour rule. Given that it would be nearly impossible to tell whether Appellants were, in fact, under 0.10 percent—or otherwise unimpaired—at the time of driving, the Court doubts whether anyone would have standing to bring a facial challenge under this argument and assumes that Appellants do have standing.

Appellants argue that the two-hour rule fails to give adequate notice of prohibited conduct because it is virtually impossible for a person to tell at what time, if any, after consuming alcohol that person's BAC will reach 0.10 percent or higher. Appellants suggest that the reason Washington's earlier DUI statute withstood a vagueness challenge was because it prohibited having a 0.10 percent BAC at the time of driving. *Cf. State v. Franco,* 96 Wash.2d 816, 639 P.2d 1320 (1982). Appellants concede that, under the old law, "any individual. could assess their [sic] coordination and general functioning at the time of driving, thereby predicting with some accuracy whether or not he or she had a .10 BAC or higher at the time." Appellants' Opening Brief at 6. In contrast, Appellants suggest, "there is no way an individual can, with even the faintest hope of predictability, assess whether or not alcohol consumption will result in a BAC level of .10 or more within two hours of driving." *Id.* at 8.

Appellants' argument fails. Hidden again in the argument seems to be the assumption that a person is not affected by alcohol until the person reaches an 0.10 percent BAC. While Appellants seem to concede that it is virtually certain that one with a 0.10 percent BAC is impaired, Appellants argue at the same time that it is not even reasonable to assume that a person who has consumed enough to reach a BAC of 0.10 percent within two hours is impaired. The Court finds it reasonable to assume that one is impaired in either case, perhaps to a different degree in each case, but enough in each case for one to be on notice that his driving could be illegal. The only sure way to know one's BAC is through breath alcohol or blood alcohol test; without such a test, it is as difficult to tell if one has reached 0.10 percent BAC as it is to tell if one will reach 0.10 percent some time in the near future, and a statute provides the

same level of notice if it prohibits driving under either condition.

By focusing on one's knowledge of his exact BAC level, Appellants miss the point. While it certainly must be hard to predict if one's BAC has reached or will reach 0.10 percent within any time frame, this does not mean that the two-hour rule provides no notice of the prohibited conduct. To the contrary, the two-hour rule, just as the former time-of-driving rule, gives fair notice that, although driving after drinking is not illegal per se, driving becomes illegal after a certain level of consumption; the fact that people cannot sense exactly what their BAC is at any given moment or will be in two hours does not change this. As the Arizona State Supreme Court put it, "[w]here a statute gives fair notice of what is to be avoided or punished, it should not be declared void for vagueness simply because it may be difficult for the public to determine how far they can go before they are in actual violation." *Fuenning v. Superior Court ex rel. Maricopa County,* 139 Ariz. 590, 598, 680 P.2d 121, 129 (1983). The rule is clear enough that, by driving after drinking, "reasonable persons [sh]ould know that their conduct is at risk," *Maynard,* 486 U.S. at 361, 108 S.Ct. at 1857, and need not "necessarily guess at its meaning," *Lanier,* —— U.S. at ——, 117 S.Ct. at 1225.[6]

2.

■■■ Appellants next argue that the two-hour rule encourages arbitrary and discriminatory enforcement because it "provid[es] no guidelines as to when the test should be administered in terms of the predicted blood alcohol curve, and as to whether or not an officer may charge the *per se* offense where duplicate breath test reveals two test measurements, one above the legal limit and one below." Appellants' Opening Brief at 8. This argument is weak. Due

---

**6.** In a highly unlikely but theoretically possible situation, perhaps one could drive while completely unaffected and yet turn out to have a BAC of 0.10 percent or higher within two hours. It is possible that such a person might not have notice that his conduct is prohibited, even under the foregoing analysis. However, a facial challenge based on this hypothetical group of unaffected "drunk" drivers is really a police powers challenge rather than an overbreadth challenge. That is, because the law itself defines the criminal conduct, it cannot punish conduct that is not "criminal"; thus, unless the conduct punished is protected by the constitution, the only question is whether the statute exceeds the police powers of the state by risking punishment of behavior that the state has no power to regulate.

process prohibits laws that encourage arbitrary enforcement by requiring the legislature to establish "minimal guidelines," without which "a criminal statute m[ight] permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (internal quotation marks omitted). The two hour rule has more than minimal guidelines.

Unlike the law in *Kolender*, which required a suspect to produce "credible and reliable" identification and therefore left police officers to pursue their personal predilections, *id.* (internal quotation marks omitted), the two-hour rule provides clear, objective guidelines: only a BAC of 0.10 percent is prohibited. In fact, the rule provides more guidance than RCW 41.61.502(1)(b), which invites an officer to determine when a person is "under the influence or affected by" alcohol. The suggestion that police officers may abuse their discretion or discriminate in deciding when to administer the test to achieve the highest BAC reading is not persuasive. If a person's BAC is such a scientifically complex and variable thing as Appellants claim that it is, making it virtually impossible for a person to tell what his own BAC might do, then it hardly seems likely that somehow a police officer might be able to determine the precise point at which a person's BAC is at its peak merely by observing the person.

Appellants also argue that the statute provides no guidelines as to whether or not an officer may charge the per se offense when duplicate breath tests reveal two test measurements, one above the legal limit and one below. This is not the case. The statute prohibits a 0.10 percent BAC. The test results are evidence of a person's BAC. Presumably, an officer always may charge a per se offense; the question is whether the State can prove it. Conflicting results where some are below the legal limit will undermine the State's case and raise a reasonable doubt in the minds of jurors, but no guidelines are needed as to whether or not an officer may *charge* the per se offense in such a situation. Police generally have such discretion.

III.

For the foregoing reasons, the magistrate judge's order denying Appellants' motion to dismiss is AFFIRMED and these cases are REMANDED for further proceedings.