COMMONWEALTH of Pennsylvania, Appellee

v.

Jeffrey BESHORE, Appellant (at 633).

Commonwealth of Pennsylvania, Appellee

v.

Paul R. Imes, Appellant (at 634).

Commonwealth of Pennsylvania, Appellee

v.

Jan L. Neufeld, Appellant (at 696).

Superior Court of Pennsylvania.

Argued Oct. 26, 2006.

Filed Jan. 18, 2007.

---

Paul R. Wagner, for appellants.

James P. Barker, Asst. Dist. Atty., Harrisburg, for Com., appellee (at 633 and 634) and Michelle H. Sibert, Asst. Dist. Atty., Carlisle, for Com., appellee (at 696).

BEFORE: FORD ELLIOTT, P.J., STEVENS, MUSMANNO, LALLY-GREEN, ORIE MELVIN, TODD, KLEIN, BENDER and BOWES, JJ.

OPINION BY BENDER, J.:

¶1 Jeffrey Beshore, Paul R. Imes, and Jan L. Neufeld (Appellants) appeal from the judgments of sentence imposed following their various convictions for driving under the influence of alcohol (DUI). On appeal, Appellants are all represented by the same attorney who has filed a brief in each case, presenting eleven identical issues supported by ostensibly verbatim argument from one brief to the next. We have reviewed all the issues and find many to be without merit and others waived. What follows are our reasons for affirming all the judgments of sentence, organized into separate sections presenting the facts of each case and then one analysis section for each of the eleven questions presented, whereby we dispose of that question as it applies to each case before us.

*FACTS*

**No. 633 MDA 2005**

¶2 On May 23, 2004, two Pennsylvania State Police Troopers were on routine patrol in a marked car traveling southbound on I–81 when an automobile operated by Jeffrey L. Beshore entered the highway. The Troopers observed Beshore's vehicle travel on the right berm several times and clocked him at a speed of 72 mph in a 55 mph zone. The Troopers then initiated a traffic stop.

¶3 Beshore immediately exhibited signs of intoxication, as he had problems provid-

ing his driver's license, vehicle registration and proof of insurance. He also had blood-shot eyes, spoke with slurred speech, and emitted a strong odor of alcohol. The Troopers administered field sobriety tests, which Beshore failed. He was placed under arrest for suspicion of DUI and taken to a local hospital. There he was given an implied consent warning, but he refused to consent to a blood test.

¶ 4 Based on the foregoing, the Commonwealth charged Beshore with DUI under 75 Pa.C.S. § 3802(a)(1) and other summary offenses. Beshore filed a pretrial motion raising several constitutional challenges to the DUI statute and its related provisions, which had been amended in 2003. *See* 75 Pa.C.S. §§ 3801–3817 (hereinafter referred to as "the new DUI law"). The court denied the motion and following a bench trial, the court found Beshore guilty on all counts. This was Beshore's third conviction for DUI and the court sentenced Appellant to a term of imprisonment of five to twenty-three months and to pay a fine.

### No. 634 MDA 2005

¶ 5 On May 28, 2004, Paul R. Imes was operating a vehicle when he was involved in a traffic accident. Police officers reported to the scene and observed Imes, who appeared to be intoxicated as he smelled of alcohol, had glassy and blood-shot eyes, and slurred his speech. The officers arrested Imes on suspicion of DUI and transported him to a local hospital where he consented to a breathalyzer test which revealed a blood alcohol content (BAC) level of .229%.

¶ 6 As a result of the foregoing, Imes was charged with DUI under Section 3802(a)(1) and Section 3802(c). Imes filed a pretrial motion raising several constitutional challenges to the new DUI law, which the court denied. Following a bench trial, the court found Imes guilty as charged. This was Imes' third DUI and

he was sentenced to a term of imprisonment of one to two years and to pay a fine.

### No. 696 MDA 2005

¶ 7 On February 14, 2004, Jan L. Neufeld was clocked traveling 54.7 mph in a 25 mph zone by a police officer from the West Shore Regional Police Department. The officer stopped Neufeld, who exhibited signs of intoxication. She emitted a strong odor of alcohol, her speech was slurred and her eyes were bloodshot and glassy. Despite being visibly intoxicated, she stated to the officer that she had drunk only one beer. After the officer administered a field sobriety test, he arrested Neufeld on suspicion of DUI.

¶ 8 Neufeld was taken to a booking center where she was given an Implied Consent warning. However, Neufeld refused to take a breathalyzer test. Based on the foregoing, the Commonwealth charged Neufeld with DUI under Section 3802(a)(1) and other summary offenses. Neufeld filed a pretrial motion raising several constitutional challenges to the new DUI law, which the court denied. Following a bench trial, the court found Neufeld guilty and sentenced her to a term of imprisonment of ninety days to twenty three months and to pay a fine.

### ANALYSIS

¶ 9 All three briefs presented by Appellants contain the same eleven questions, which are as follows:

A. Should Act 24 of 2003 be analyzed under the strict scrutiny test as effecting [sic] a fundamental right?

B. Does Act 24 of 2003 violate the United States Constitutional Amendment 5 as being void for vagueness?

C. Does the statute violate the 5th Amendment of the United States Constitution if it is overly broad in its applica-

tion to constitutionally protected activity?

D. Does the Act 24 of 2003 violate the due process guarantees in that it permits and promotes arbitrary and discriminatory enforcement by police officers?

E. Is Act 24 of 2003 arbitrary in its application and therefore violative of the due process guarantees of the constitution?

F. Does Act 24 of 2003 violate the defendant's 6th Amendment right to counsel at a time of request for chemical test or refusal to take such test?

G. Does the Act violate the defendant's 5th Amendment right to remain silent?

H. Does Act 24 of 2003 violate the equal protection clause by creating classifications that do not bear a rational relationship to a legitimate state interest?

I. Does Act 24 of 2003 violate the due process clause of the federal and state constitutions and the notice and trial guarantees of the 6th Amendment by increasing the penalty for a crime without charging the element that increases that penalty and without requiring proof of that element?

J. Does Act 24 of 2003, as it amends § 6308 of the Motor Vehicle Code, violate the Pennsylvania Constitution, Article I, § 8 and § 4?

K. Are the penalty provisions of Act 24 of 2003 ambiguous and inconsistent with other provisions of the act so as to fail to provide notice to the accused that his contemplated conduct is unlawful?

Brief for Appellant Beshore at 4–6; Brief for Appellant Imes at 4–6; Brief for Appellant Neufeld at 5–7.[1]

1. We admonish Appellants' counsel for grossly violating the Pennsylvania Rules of Appellate Procedure by presenting a Statement of Questions Involved that is three pages long,

¶ 10 We note that all eleven questions present constitutional challenges of one sort or another to the new DUI law.

[W]hen evaluating challenges to a statute-whether those challenges are based on vagueness, overbreadth, the Commonwealth's burden of proof, the right to defend, or any other considerations-we must also keep in mind that there is a strong presumption that legislation is constitutional. A party challenging legislation bears a heavy burden to prove otherwise. Accordingly, this Court will strike the statute in question only if Appellant convinces us that it clearly, palpably and plainly violates the federal or state constitutions.

*Commonwealth v. Thur*, 906 A.2d 552, 560–61 (Pa.Super.2006) (citations omitted).

## Question A.

¶ 11 In the first question presented for our review, Appellants claim that a strict scrutiny test should be applied in determining the constitutionality of the new DUI law. However, as the Commonwealth argues, Appellants have conflated two issues here, *i.e.*, the fact that a penal statute is to be strictly construed, *see Commonwealth v. Henderson*, 444 Pa.Super. 170, 663 A.2d 728, 733 (1995); 1 Pa. C.S. § 1928(b)(1), and on the other hand the highest level of scrutiny applied in an equal protection analysis.

When addressing an equal protection challenge, we must initially ascertain the appropriate degree of scrutiny to which the challenged act is to be subjected. Equal protection analysis recognizes three types of governmental classification, each of which calls for a different standard of scrutiny. The appropriate

whereas it is well known that the rules mandate that the statement never exceed one page. *See* Pa.R.A.P. 2116(a).

standard of review is determined by examining the nature of the classification and the rights thereby affected.

In the first type of case, where the classification relates to who may exercise a fundamental right or is based on a suspect trait such as race or national origin, strict scrutiny is required. When strict scrutiny is employed, a classification will be invalid unless it is found to be necessary to the achievement of a compelling state interest.

The second type of case involves a classification which, although not suspect, is either sensitive or important but not fundamental. Such a classification must serve an important governmental interest and be substantially related to the achievement of that objective.

The third type of situation involves classifications which are neither suspect nor sensitive or rights which are neither fundamental nor important. Such classifications will be valid as long as they are rationally related to a legitimate governmental interest.

*In re Private Complaint of Owens Against Coker*, 810 A.2d 172, 177 (Pa.Super.2002). Thus, when analyzing the constitutionality of a statute that affects a suspect class or a fundamental right, courts are to apply to strict scrutiny test to determine whether the statute advances a compelling state interest. This is entirely unrelated to the requirement that penal statutes are to be strictly construed, which prescribes the manner in which courts are to read penal statutes.

■ ¶ 12 Certainly, the new DUI law, as a penal statute, is subject to strict construction. However, as we shall discuss below, since the law does not affect a suspect class or a fundamental right, its constitutionality shall not be determined pursuant to a strict scrutiny analysis. Accordingly, we find no merit to Appellants' first question.

## Question B.

■ ¶ 13 In the second question presented for our review, Appellants argue that Section 3802 is unconstitutional because it is void for vagueness.

As generally stated, the void for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. *[Commonwealth v. Mikulan*, 504 Pa. 244, 251, 470 A.2d 1339, 1342 (1983)], *quoting*, *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). *See Commonwealth v. Burt*, 490 Pa. 173, 177–78, 415 A.2d 89, 91 (1980), *quoting, Colautti v. Franklin*, 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979) (a statute is void for vagueness if it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' "). Due process requirements are satisfied if the statute provides reasonable standards by which a person may gauge their future conduct. *Commonwealth v. Heinbaugh*, 467 Pa. 1, 6, 354 A.2d 244, 246 (1976), *citing, United States v. Powell*, 423 U.S. 87, 94, 96 S.Ct. 316, 320–21, 46 L.Ed.2d 228 (1975).

*Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162, 165 (1996) (quotation marks omitted).

¶ 14 Appellants claim that Section 3802 is vague because it does not contain a "time nexus" that would link the act of drinking with the subsequent act of driving. In pertinent part, Section 3802 states:

**§ 3802. Driving under influence of alcohol or controlled substance**

**(a) General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(b) **High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

(c) **Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)-(c).[2]

¶ 15 Pursuant to Section 3802(a)(1), if a person imbibes enough alcohol to make that person incapable of safely driving, he or she may not thereafter operate a vehicle. Appellants claim that such a person could never drive again pursuant to the literal meaning of this statute. In *Commonwealth v. McCoy*, 895 A.2d 18 (Pa.Super.2006), we addressed this exact argument.

Our rules of statutory construction and interpretation provide that we are to attempt to ascertain the effect of the legislature. 1 Pa.C.S.A. § 1921. If the language leaves any doubt, we can consider, *inter alia*, the mischief to be remedied by the statute, and the object to be obtained. *Id.* We are to presume that the legislature did not intend a result that is absurd or unreasonable. *Id.*, § 1922. Also, "courts are not required to give the words of a criminal statute their narrowest meaning or disregard the evident legislative intent of the statute." *Barud, supra,* at 304, 681 A.2d at 165. Further, as appellant notes, the title and preamble of a statute may be considered in its construction. *Id.*, § 1924.

Applying the above, we conclude the following. It is quite clear from the title of Section 3802, **Driving under influence of alcohol or controlled substance,** that the mischief the legislature seeks to remedy is, in fact, *driving while under the influence of alcohol or a controlled substance.* It would be utterly absurd and unreasonable to suggest that a person who imbibed a sufficient amount of alcohol such that he is rendered incapable of safe driving will, from that time forward, even after becoming sober, forever be in violation of the statute if he proceeds to drive. Surely, an enormous number of licensed drivers, at one time or another, have imbibed alco-

---

**2.** We note that our decision here does not address or in any way involve the constitutionality of Section 3802(d) regarding controlled substances. None of the Appellants was convicted under subsection (d), and therefore, nothing stated herein implicates that part of the new DUI law.

hol to the point of being incapable of safe driving. The legislature certainly did not intend a result that would prohibit a vast number of licensed drivers from ever driving again. We simply cannot accept appellant's interpretation.

Moreover, we conclude this provision is not vague. It gives a person of ordinary intelligence notice that he may not drive after imbibing a sufficient amount of alcohol such that he is incapable of driving safely. As the trial court explained, "the time elapsed between the act of driving is irrelevant. The only relevant issue ... is the capacity to drive safely and whether any found incapability is *causally related* to the consumption of alcohol."

*McCoy*, 895 A.2d at 31. We agree with this reasoning and conclude that Section 3802 is not void for vagueness due to the lack of a "time nexus" between the time of drinking and driving.

 ¶ 16 Appellants also argue that Section 3802 is void for vagueness because of the three tier system created by subsections (a), (b), and (c). Appellants argue that a person of ordinary intelligence would not know which subsection is violated by what conduct. We addressed a similar argument in *Thur*, where we stated that under the previous DUI law, a driver also had to predict when his or her BAC had reached a certain limit, and we reiterated that our Supreme Court has "recognized that there are widely available charts concerning the number of drinks that can be safely consumed by persons of varying weights. These charts can help guide people when estimating their alcohol levels, thus making the process of estimation not so burdensome." *Thur*, 906 A.2d at 562 (citing *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339, 1343–44 (1983) (plurality decision)).

¶ 17 In *Mikulan*, our Supreme Court rejected a constitutional challenge based on vagueness and stated that "there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving and there is little doubt that the legislature could, if it so chooses, prohibit driving within a certain reasonable time after drinking *any* amount of alcohol." *Mikulan*, 470 A.2d at 1344. In *Thur*, we expounded upon this jurisprudence, and stated:

From the *Mikulan* reasoning, we distill the following proposition: It is constitutionally permissible to require drivers to predict their BACs at some reasonable future time after drinking. Under the old statute, the relevant future time was the period during which the person might be driving. Under the new statute, the relevant future time is the period within two hours after driving.

We believe it is no more difficult for drivers to predict their BACs within two hours after driving than it was to predict them at the time of driving. Both predictions involve a general estimation. Drivers know what they weigh, how much they drink and how much time passes during and after drinking. They are required to know how much alcohol is in their blood and how much has perhaps "worn off". They know how soon after drinking they choose to drive, and they know when two hours after that point will be.

Although the two-hour time period means that drivers have to account for absorption and dissipation rates over those two hours, such considerations have always been an inherent, if unstated, part of the BAC estimation incumbent upon drivers. While it is doubtful that drinkers have ever articulated the terms "absorption" and "dissipation" in the course of deciding whether they should drive, it is undeniable that the statute placed on those drivers the re-

sponsibility to realize that a certain amount of alcohol consumed in a certain time period would be absorbed into their blood such that they had a prohibited BAC level. Likewise, it is equally certain that such drinkers had to decide if they had "sobered up" enough—if enough drinks had "worn off"—such that they could legally drive. These were implicit, albeit not technically precise, considerations of absorption and dissipation.

The new law is the same. Drinking drivers can estimate their BACs and regulate their conduct. This process of estimating a BAC is not unreasonable, speculative or overly burdensome. It is something that people of common, ordinary intelligence can do. Drivers can gauge their contemplated drinking and driving just as they did under the old law. It is just that they now must keep in mind their BACs for a slightly expanded period of time.

We find it was constitutionally permissible to require Appellant to monitor his conduct so as to ensure that he did not have a prohibited blood alcohol level at any time within two hours of driving. For all of these reasons, we hold that 75 Pa.C.S.A. § 3802(c) is not void for vagueness.

*Thur*, 906 A.2d at 561–62. For all the foregoing reasons we conclude that Section 3802(a)-(c) provides a reasonable standard for drivers to gauge their conduct, and therefore, the statute is not void for vagueness.

### Question C.

 ¶ 18 In the third question presented for our review, Appellants claim that Section 3802 is unconstitutional because it is overbroad. "A statute is 'overbroad' if by its reach it punishes constitutionally protected activity as well as illegal activity." *Barud*, 681 A.2d at 165. Nor can the words of a statute punish "protect-ed lawful activity" as well as illegal activity. *Id.* In this case, Appellants claim that Section 3802 is overbroad for two reasons.

¶ 19 First, Appellants rehash their "time nexus" argument claiming that the statute is overbroad because it punishes a driver who drives completely sober though days earlier, that person had imbibed sufficient amounts of alcohol to make him or her incapable of safe driving. As we stated above, we find this reading of the statute to be absurd and unreasonable, and consequently, we reject it.

 ¶ 20 Second, Appellants argue that Section 3802 is overbroad because it punishes drivers who may not have reached the prohibited BAC level at the time of driving, but reach it afterwards. In making this argument, Appellants rely heavily on our Supreme Court's decision in *Barud*, where the court held that 75 Pa. C.S. § 3731(a)(5), which outlawed a BAC of .10% within three hours of driving, was void for vagueness because it unnecessarily swept in lawful activity, *i.e.*, driving with BAC below .10%, which was presumably lawful under 75 Pa.C.S. § 3731(a)(4).

¶ 21 In *Thur*, we explained that the new DUI law contains no provision similar to Section 3731(a)(4), and there is nothing in the new DUI law that arguably permits a person to drive with a BAC below a certain level. Thus, we stated:

The current statute is unlike the previous one: There is no longer a statutory provision such as the old § 373[1](a)(4) giving rise to a presumptive legal limit at the time of driving. *McCoy*, 895 A.2d at 33. There is no indication that it is legal to drive below a certain limit or that it becomes illegal to drive above a certain limit. *Id.*

Furthermore, there is no statutory, constitutional or common law right to drink any amount of alcohol before driving or to drive with any particular BAC.

*Id.* Rather, the pertinent inquiry under the current § 3802(c) is whether the person consumed alcohol such that the BAC meets or exceeds 0.16% within two hours after driving. *Id.* Therefore, Appellant is also wrong to assume that a driver operating a vehicle with a BAC below 0.16% and whose level reaches that mark within two hours has somehow performed a legal act that is wrongly punished. To the contrary, the driver has done something illegal: He or she has had enough drinks such that his or her BAC reached the mark within two hours after driving. Such driving was not constitutionally immune from punishment. The Legislature can and has provided a sanction for such driving in its effort to deter drunk driving. The statute does not punish protected behavior.

We recognize that the title of the statute in question is **Driving** Under the Influence of Alcohol or Controlled Substance. 75 Pa.C.S.A. § 3802 (emphasis added.) Appellant suggests that, because of this title, the Legislature could only proscribe certain BACs at the exact time of driving rather than during a wider time frame. We will not shackle the Legislature to such precision. In their effort to combat the dangers of drunk driving, the lawmakers have evidently chosen to take an aggressive approach, penalizing offenders for driving if they have consumed enough alcohol to bring them to the proscribed level at any time within two hours after driving.

This approach is admittedly more comprehensive than the old statute which only prohibited BACs at the exact time of operating a vehicle. However, it seems to us that this step is reasonably related to the legitimate, indeed compelling, legislative goal of protecting the health and safety of persons on the roadways. *See Mikulan,* 470 A.2d at 1342 (finding that the General Assembly

has a compelling interest in protecting citizens against drunk drivers).

This is merely common sense. By enlarging the time period in which a BAC is outlawed, the Legislature more effectively deters drunk driving. This effort is rational and inoffensive to due process. Subsection 3802(c) is not overly broad.

*Thur,* 906 A.2d at 563. We stand by this reasoning, and on this basis, we reject Appellants' challenge to the statute as being overbroad.

### Question D.

 ¶ 22 Appellants next argue that Section 3802 is unconstitutional because it encourages arbitrary and discriminatory enforcement. In particular, Appellants claim that police officers may discriminatorily or arbitrarily time the BAC test to ensnare drunk drivers. We addressed and rejected this exact argument in *McCoy,* wherein we stated:

That the Commonwealth has two hours after the individual has driven in which to conduct a chemical test does not make the statute ambiguous. Specifically as to appellant, certainly he cannot argue that he was unaware that he was prohibited from driving with a .233% BAC. Further, as for encouraging arbitrary or erratic enforcement, any discretion is eliminated by the objective standard of BAC. It is simply ludicrous to suggest, as appellant does, that an officer can exercise discretion by somehow knowing just when the person's BAC will peak and will time the chemical test accordingly.

*McCoy,* 895 A.2d at 33 (citations omitted).

¶ 23 We likewise conclude that it is unreasonable to expect that officers will use discretion to time BAC tests. Significantly, Appellants do not articulate how an officer would know when to administer the

test in order to obtain a higher BAC level. Nor do Appellants show how or why officers would arbitrarily determine when to give the test. Of course, the norm is that the BAC test is administered at the soonest time allowable by a multitude of circumstances that vary from case to case. Thus, while the timing may vary depending on the case, under subsections (a) through (c), the test must always be performed within two hours of driving. *See* 75 Pa.C.S. § 3802(a)-(c).[3] We find no merit to this issue.

## Question E.

■ ¶ 24 In the next question presented for our review, Appellants claim that 75 Pa.C.S. § 3804(b) is void for vagueness because it encourages arbitrary and discriminatory enforcement. Section 3804 is the penal provision of the new DUI law. It is a lengthy section, as it delineates a multitude of penalties that can be imposed under varying circumstances. Subsection (b) states:

> **(b) High rate of blood alcohol; minors; commercial vehicles and school buses and school vehicles; accidents.**—Except as set forth in subsection (c), an individual who violates Section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property or who violates section 3802(b), (e) or (f) shall be sentenced as follows:

(1) For a first offense, to:

(i) undergo imprisonment of not less than 48 consecutive hours;

(ii) pay a fine of not less than $500 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815

(2) For a second offense, to:

(i) undergo imprisonment of not less than 30 days;

(ii) pay a fine of not less than $750 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(3) For a third offense, to:

(i) undergo imprisonment of not less than 90 days;

(ii) pay a fine of not less than $1,500 nor more than $10,000; and

(iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(4) For a fourth or subsequent offense, to:

(i) undergo imprisonment of not less than one year;

(ii) pay a fine of not less than $1,500 nor more than $10,000; and

(iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S. § 3804(b).

■ ¶ 25 In each of their briefs, Appellants have presented an identical one-page argument challenging the constitutionality of this subsection. In this argument, they challenge the constitutionality of the statute based on two hypothetical scenarios in which a person is convicted for DUI in cases where there has been an accident and personal injury. Nowhere do Appellants explain how these scenarios relate to

---

**3.** We note that Appellants specifically challenge subsections (a) through (c). They do not discuss, nor do they reference subsection (g) which sets forth an exception to the two-hour rule. *See* 75 Pa.C.S. § 3802(g).

their individual cases. In particular, it is clear that there was no accident in the cases of Appellants Beshore or Neufeld. Consequently, it appears that they lack standing to challenge this provision.

While a defendant in an enforcement proceeding generally has standing to assert in his defense any claim, including the constitutionality of a statute, that challenges the authority of the state to impose its force upon him, he does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution.

*Commonwealth v. Dodge,* 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981). Appellants Beshore and Neufeld have failed to demonstrate how they are affected by this statute, and it is clear to this Court that the subsection regarding accidents has no application in their cases. Consequently, we conclude that they lack standing.

¶ 26 As for Appellant Imes, whose case did involve an accident, we conclude that he has waived the issue. "The failure to develop an adequate argument in an appellate brief may [ ] result in waiver of the claim" under Pa.R.A.P. 2119. *Commonwealth v. Gonzalez,* 415 Pa.Super. 65, 608 A.2d 528, 531 (1992). In this case, Imes has presented no argument explaining how he was affected by Section 3804(b), and includes no citation to the record to support his argument. We shall not develop an argument for Imes, nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived.

## Question F.

¶ 27 In the next question presented for our review, Appellants claim that 75 Pa.C.S. § 1547 violates their Sixth Amendment right to counsel. Section 1547, known as the Implied Consent Law, states the following as a general rule:

## § 1547. Chemical testing to determine amount of alcohol or controlled substance

(a) General rule.—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

(1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

75 Pa.C.S. § 1547(a).

¶ 28 In *Commonwealth v. Ciccola,* 894 A.2d 744 (Pa.Super.2006), this Court addressed this exact claim, and we stated the following:

It has been a staple of caselaw dealing with the sixth amendment right to counsel that a criminal defendant has a constitutionally guaranteed right to counsel at all "critical stages" of a criminal proceeding.

. . .

Undoubtedly, the decision whether to submit to chemical testing can be an important tactical decision. If one refuses a BAC test, he may deprive the Commonwealth of valuable evidence and

force the Commonwealth to proceed under section 3802(a)(1), incapable of safely driving. Depending upon the evidence available to the Commonwealth to prove the driver lacked the capacity to drive safely, the absence of a BAC test may hinder the Commonwealth's case and even lead to an acquittal even though the possibility existed that the driver was over the proscribed BAC limit. Conversely, refusing to submit to a BAC test comes with consequences, including, if convicted, punishment as if the defendant had operated a motor vehicle at the highest rate of alcohol. Thus, it cannot be doubted that the decision to consent to a BAC test has strategic implications and, in this respect, might be deemed "critical" to the defendant.

However, it does not appear that such strategic tactical decisions have been recognized as critical stages of the proceedings so as to invoke the right to counsel. A request to submit to a BAC test represents the government's efforts to gather evidence already in existence, albeit in a transitory or unstable state which makes time of the essence. As the quote above indicates, encounters involving the gathering of evidence are not considered "critical proceedings" for purposes of the right to counsel. That is, such preliminary encounters do not affect the inherent "fairness" of the trial vis-à-vis the ability to cross-examine witnesses or have effective assistance of counsel at the trial itself. As such, the provision of counsel at this stage is not constitutionally mandated and the denial of the right to confer with counsel prior to deciding whether to submit to chemical testing does not render Appellant's refusal inadmissible.

*Ciccola,* 894 A.2d at 748–50. We adhere to the foregoing reasoning, and therefore, we find no merit to Appellants' argument on this issue.

## Question G.

¶ 29 Next, Appellants argue that Section 1547 violates their Fifth Amendment right against self incrimination because their silence, *i.e.,* a refusal to take a BAC test, is admissible against them at trial. Although Appellants do not specifically state which subsection of Section 1547 they are challenging, it is clear that subsection (e) is the applicable provision, and it states:

**(e) Refusal admissible in evidence.**— In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any other violation of this title arising out of the same action, the fact that the defendant refused to submit to chemical testing as required by subsection (a) may be introduced in evidence along with other testimony concerning the circumstances of the refusal. No presumptions shall arise from this evidence but it may be considered along with other factors concerning the charge.

75 Pa.C.S. § 1547(e).

¶ 30 In *Commonwealth v. Graham,* 703 A.2d 510 (Pa.Super.1997), we addressed the same constitutional challenge to subsection (e), and we stated:

Although appellant acknowledges that § 1547(e) of the Motor Vehicle Code permits a defendant's refusal to submit to chemical testing to be introduced at trial, appellant argues that this provision is unconstitutional because it attaches a penalty to his exercise of a constitutional right. The constitutional right he claims is his right to refuse the blood test, and the penalty he alleges is the authority of the Commonwealth to inform the factfinder that the defendant refused to take the test.

Appellant's argument is flawed for several reasons. First, contrary to his assertion, appellant had no constitutional

right to refuse the blood test. Therefore, § 1547(e) does not burden appellant's constitutional rights by allowing evidence of his refusal to consent to be admitted at trial. Appellant's right to refuse the blood test is derived only from § 1547 itself and not from the Constitution. As explained by our supreme court in *Commonwealth v. Stair,* 548 Pa. 596, 699 A.2d 1250 (1997), under our Implied Consent Law, there is:

> no constitutional right to refuse chemical testing.... [D]riving in Pennsylvania is a civil privilege conferred on individuals who meet the necessary qualifications set forth in the Vehicle Code.... Under the terms of the Implied Consent Law, one of the necessary qualifications to continuing to hold that privilege is that a motorist must submit to chemical sobriety testing, when requested to do so by an authorized law enforcement officer in accordance with the prerequisites of the Implied Consent Law. The obligation to submit to testing is related specifically to the motorist's continued enjoyment of the privilege of maintaining his operator's license.

*Id.*

Indeed, the United States Supreme Court has also made it clear that a defendant does not have a constitutional right to refuse blood tests. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The *Schmerber* Court noted that while blood test evidence may be "an incriminating product of compulsion," such evidence in no way implicates an accused's testimonial capacities and therefore, its admission does not offend the privilege against self incrimination embodied in the fifth amendment. *See id.* at 765, 86 S.Ct. at 1832–33. The Court noted that the fifth amendment privilege relates to testimony or communication from an accused. The privilege does not prevent the police from using the accused's body or blood as physical evidence when it is material. *Id.* at 763–64, 86 S.Ct. at 1831–32.

Taking this analysis another step, the United States Supreme Court has further reasoned "that since submission to a blood test could itself be compelled, ... a State's decision to permit a suspect to refuse to take the test but then to comment upon that refusal at trial [does] not 'compel' the suspect to incriminate himself and hence [does] not violate the privilege." *Pennsylvania v. Muniz,* 496 U.S. 582, 604 n. 19, 110 S.Ct. 2638, 2652 n. 19, 110 L.Ed.2d 528 (1990) (citations omitted). *See also South Dakota v. Neville,* 459 U.S. 553, 563, 103 S.Ct. 916, 922, 74 L.Ed.2d 748 (1983) ("the values behind the Fifth Amendment are not hindered when the State offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him"). This court has previously joined the Supreme Court in this sentiment. *See Commonwealth v. Dougherty,* 259 Pa.Super. 88, 393 A.2d 730 (1978) (admission into evidence of defendant's refusal to submit to breathalyzer test not violative of defendant's privilege against self incrimination); *Commonwealth v. Robinson,* 229 Pa.Super. 131, 324 A.2d 441 (1974) (admission into evidence of defendant's refusal to submit to breathalyzer test under implied consent law does not violate defendant's fifth amendment privilege against self-incrimination).

Section 1547(e) merely represents a codification in Pennsylvania of the rule of *Neville* and *Schmerber* expressly permitting refusals to be made known to the factfinder where the police reasonably believe that the defendant is under the influence of alcohol or a controlled substance. Because it is clear that appellant had no constitutional right to

refuse the blood test, § 1547(e) does not burden appellant's constitutional rights by allowing evidence of his refusal to consent to be admitted at trial.

*Graham,* 703 A.2d at 511–13 (footnote omitted). The foregoing reasoning and analysis disposes of Appellants' claim on this issue and demonstrates that it entitles them to no relief.

### Question H.

¶ 31 In the next question presented for our review, Appellants claim that the new DUI law violates the Equal Protection Clause. Despite referencing several sections, Appellants glaringly neglect to indicate which specific statute they are challenging. The argument contains various hypotheticals which may arise under the penalty provisions of Section 3804, and ostensibly, this is the section they are challenging.

¶ 32 However, Appellants' argument, which is identical for all three briefs, contains no citation to the record nor any discussion of how Section 3804 affected each of their individual cases. Consequently, for the same reasons set forth in our discussion addressing Question E. above, we conclude that Appellants have either failed to demonstrate that they have standing to challenge Section 3804 or, alternatively, they have waived this claim.

### Questions I–K.

¶ 33 In the next three questions presented for our review, Appellants present arguments based on the foregoing model. The arguments, which are identical in each brief before us, are full of rhetorical questions and hypothetical scenarios. Appellants never cite the record in their respective case, nor present any argument as to how their claim relates to their particular case. Under these circumstances, we conclude for the same reasons set forth in our discussion of Question E. that the remaining three arguments are waived or, alter-

natively, that Appellants have failed to demonstrate that they have standing to challenge the statutes therein.

¶ 34 Judgments of sentence affirmed.

¶ 35 Judge KLEIN files a concurring and dissenting opinion.

### CONCURRING AND DISSENTING OPINION BY KLEIN, J.:

¶ 1 While I join in the thorough and scholarly opinion in the Jeffrey Beshore and Jan L. Neufeld cases, I believe the Pennsylvania Supreme Court decision in *Commonwealth v. Barud,* 545 Pa. 297, 681 A.2d 162 (1996), requires reversal of the conviction of Paul R. Imes. Therefore, while I join in the ***Beshore*** and ***Neufeld*** part of the majority opinion, I am compelled to dissent in the ***Imes*** case.

¶ 2 The cogent argument of the majority *could* logically be considered the law of Pennsylvania, providing that it is constitutional to make it a criminal offense for anyone to drive after drinking enough so that the driver's blood alcohol rises above the stated limit within two hours, whether or not the person is capable of safe driving before the alcohol takes effect and stops driving after becoming impaired. Because of the dangers of driving while drunk, it could be considered within the constitutional power of the legislature to draft a statute the way it has.

¶ 3 It must be recognized that it is possible for one to drink, still be below the legal limit while driving for some time after consuming the last drink, but have a high blood alcohol content (BAC) and be unable to safely drive if tested two hours later. Most courts have determined that it does not matter that a person's blood alcohol is far below the legal limit at the time of driving and that the person can drive safely if the person's blood alcohol reaches or exceeds the statutory limit within a certain

time period after that person drove. The legislature has the power to make sure those who drink do not drive and to avoid the arguments that at the time of driving the driver was not yet legally impaired. However, that is not what the Pennsylvania Supreme Court said in *Barud.*

¶ 4 The key language of the *Barud* Court is the following:

Because § 3731(a)(5) unnecessarily encompasses both lawful and unlawful conduct; fails to provide a reasonable standard by which a person may gauge their conduct; encourages arbitrary and discriminatory enforcement; and fails to require proof that a person's BAC actually exceeded the legal limit *at the time of driving;*, we conclude that 75 Pa.C.S. § 3731(a)(5) is unconstitutional.

\* \* \* \* \* \*

Indeed, the most glaring deficiency of § 3731(a)(5) is that the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit *at the time of driving.* Rather, the statute criminalizes a blood alcohol level in excess of the legal limit up to three hours *after* the last instance in which the person operated a motor vehicle and without any regard for the level of intoxication at the time of operation. Thus, a person may be prosecuted under § 3731(a)(5) even though his or her blood alcohol level did not actually rise above the legal limit of .10% until *after* the last instance in which he or she drove.

\* \* \* \* \* \*

Accordingly, because we find that § 3731(a)(5) clearly, palpably and plainly violates both the Constitutions of the United States and of this Commonwealth, the order of the trial court is hereby affirmed.

681 A.2d at 163, 166–67. (emphasis original).

¶ 5 This Court distinguished *Barud* in *Commonwealth v. Thur,* 906 A.2d 552 (Pa.Super.2006), based on the difference between the old section 3731(a)(5) discussed in *Barud* and the new statute in effect in this case, section 3802(c). Old section 3731(a)(5) penalized driving with a blood alcohol level of 0.10% or greater when a sample was obtained within three hours after the person drove. Section 3802(c) provides that it is an offense if a person drinks enough alcohol so that the BAC is above the statutory limit[4] within two hours of the time the person drove.[5]

¶ 6 I believe this is a distinction without a difference. Under the old act, if a person drove within three hours of a test showing his or her blood alcohol exceeded .10%, he or she committed a crime. This was held to be unconstitutional under the Pennsylvania and United States Constitutions because the person could have been driving legally and become impaired later. I believe it rivals the Sophists to say that under the old statute it was illegal to drive with a BAC over the 0.10% limit, while now it is only illegal to drive if you later are tested over the limit, so the new DUI law does not punish legal driving.

4. The limits were changed in the new statute.

5. Section 3731(a)(5) of the old statute provided that it was a crime to exceed the BAC limit "if the amount of alcohol by weight in the blood of the person is 0.10% or greater *at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is: (i) obtained within three hours after the person drove, operated, or was in actual physi-*

*cal control of the vehicle.''* Section 3802(c) of the new act says that "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.''

¶ 7 That position seems to assume that under the old statute there was a "legal limit" *when driving* with a BAC of 0.10% while now there is no legal limit *when driving* and the only "illegal" limit relates to the BAC in the test when taken later. A reasonable interpretation is that the *Barud* court held that to comport with due process, there must be a showing that the driver could not safely drive with the amount of alcohol in his bloodstream when he or she was driving, even if the BAC was higher later. Under either statute, if you have a couple of drinks and drive home still sober with a very low blood alcohol, you are doing nothing to endanger the community and should be said to drive "legally."

¶ 8 I have no quarrel with the majority's position that it makes more constitutional sense to say that because of the risk, the legislature could ban driving after drinking any alcohol. Many other jurisdictions have taken that position. But the Pennsylvania Supreme Court did not. The fair import of *Barud* is that if one is in perfect control of a vehicle when driving and would not show a significantly increased BAC level if tested while driving, it is unconstitutional to criminalize that behavior even if the BAC rises later.

¶ 9 I am not alone in construing *Barud* to mean that it is unconstitutional to make it a crime if *when driving* the person had not exceeded the legal BAC limit. Several other courts, while rejecting the constitutional challenge to similar provisions, have said that *Barud* must be read to mean that unless the blood test has a connection to the time the person was driving it is unconstitutional to impose a criminal sanction.

¶ 10 In *State v. Crediford,* 130 Wash.2d 747, 927 P.2d 1129 (1996), the Supreme Court of Washington, in an *en banc* decision, upheld the constitutionality of a provision making it an offense to drive if "the

person has, within two hours after driving, an alcohol concentration of 0.10 or higher ..." *Id.* at 1132. Thus, the framework is similar to the present Pennsylvania law. The Washington Supreme Court took specific pains, not to distinguish *Barud,* but to say "we respectfully disagree with the Pennsylvania Supreme Court insofar as it reasoned that 'the most glaring [constitutional] deficiency' in that state's statute creating a 'three-hour rule' that is analogous to the 'two-hour rule' in [Washington's statute] was 'that the statute completely fails to require any proof that the accused's blood alcohol level actually exceeded the legal limit [of 0.10 percent] *at the time of driving.*" *Id.* at 1134, n. 4. The Washington Supreme Court seems to believe that the constitutional deficiency found by the *Barud* Court is that the statute punishes someone who could be perfectly capable of driving *at the time of driving.*

¶ 11 The United States District Court for the Western District of Washington reached the same result and read *Barud* the same way in *U.S. v. Skinner,* 973 F.Supp. 975 (W.D.Wash.1997). That Court referred to the appellants' arguments that the "two-hour" rule exceeded the legitimate police powers of the state, created an impermissible mandatory presumption, and was void for vagueness. Before rejecting appellants' claims the Court recognized that "a few of these arguments have been accepted by at least one state court." (citing *Barud, supra*).

¶ 12 The Supreme Court of Georgia affirmed its statute that made it a crime to have a blood-alcohol concentration of 0.10 or greater as measured within three hours of driving in *Bohannon v. State,* 269 Ga. 130, 497 S.E.2d 552 (1998). Here, as well, the appellant made the argument that the statute violated due process and was unconstitutional because it was not reason-

ably related to a state interest, was too vague, was overbroad because it criminalizes constitutionally protected activity, and creates a burden-shifting presumption. In rejecting those arguments, the Georgia Supreme Court noted that Bohannon relied on *Barud* and specifically said that it found the *Barud* decision "unpersuasive." *Id.* at 556.

¶ 13 The Supreme Court of Nevada had the same interpretation of *Barud* in *Sereika v. State,* 114 Nev. 142, 955 P.2d 175 (1998). The state statute also provided for a crime if a BAC was .10 or higher within two hours after driving. In specifically disapproving *Barud,* the Nevada Supreme Court said:

> We disapprove of the *Barud* court's failure to consider any conceivable rational basis for the statute other than to create a conclusive presumption that the defendant had a blood alcohol level of .10 or more at the time of driving. Rational basis review requires an additional measure of speculation regarding legislative purpose ...

*Id.* at 178, n. 4.

¶ 14 The majority in this case, this Court in other cases, and many other state supreme courts[6] have found a legitimate, constitutional purpose in prohibiting driving if a blood test will exceed a limit within a few hours of driving. In some cases this will punish a driver who has a few drinks at a bar, quickly goes home before the alcohol takes full effect, and violates the law although *never driving while impaired.* This is a reasonable trade-off, and a policy decision the legislature prudently

found necessary. It is not irrational to provide that if a person takes a few drinks, they should not drive a car, even immediately afterwards, because although they *might* be capable of safe driving, they might not be. Because of the great risk created by drunk drivers, a driver should not be permitted to take such a chance. While that is a rational viewpoint, and may even be the *better* viewpoint, it is not the position taken by the Pennsylvania Supreme Court in *Barud.* I believe we are bound by *Barud,* must reverse Imes' conviction, and leave it to the Pennsylvania Supreme Court to reconsider its language in *Barud.*

¶ 15 Therefore, I am compelled to dissent.

---

**6.** In addition to the cases that cite *Barud, see State v. Chirpich,* 392 N.W.2d 34 (Minn.App. 1986) (DWI statute making it a crime to drive when driver's alcohol concentration as measured within two hours of time of driving is 0.10 or more not constitutionally overbroad or void for vagueness); *State v. Rose,* 312 N.C. 441, 323 S.E.2d 339 (1984) (statute proscribing driving after or while consuming a quanti-

ty of alcohol which, at any time after driving, is sufficient to result in a BAC of 0.10 or greater is not unconstitutionally vague); *State v. Howren* 312 N.C. 454, 323 S.E.2d 335 (1984) (same); *City of Fargo v. Stensland,* 492 N.W.2d 591 (N.D.1992) (statutes did not violate substantive due process even though persons with BAC below .10 while driving might be convicted thereunder).