J-S58001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSEPH CHARLES SMITH, | |
| Appellant | No. 1015 WDA 2012 |

Appeal from the PCRA Order May 29, 2012
in the Court of Common Pleas of Allegheny County
Criminal Division at Nos.: CP-02-CR-0008807-2003;
CP-02-CR-0010345-2004

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED NOVEMBER 21, 2014**

Appellant, Joseph Charles Smith, appeals *pro se* from the order denying him relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, without a hearing, as without merit.  Appellant's *pro se* brief substantially fails to comply with our rules of appellate procedure.  We quash.

We summarize only the facts most relevant to the disposition of this appeal.  On April 30, 2003, four co-conspirators in ski masks kidnapped David Williams, Lakeenah Fitts, and their infant child.  The assailants beat Williams and demanded $150,000 ransom.  There ensued a frantic effort by Williams and Fitts to obtain sufficient funds from various relatives and

---

[*] Retired Senior Judge assigned to the Superior Court.

friends to pay the ransom. The kidnappers drove Williams, Fitts, and their child around in Williams' van, as they tried to get the money. One of the people they tried to get ransom money from was Erica Lunsford, a former girlfriend of Williams. When the efforts ultimately failed, Williams' captors shot and killed him. The kidnappers left Williams, dead or dying, in his van, alone with his infant daughter.

Around that time, a 911 call reported that two black males wearing ski masks were seen jumping out of a white van and getting into a blue S-10 Chevy blazer. The police subsequently found the blazer. It had been set on fire and was severely damaged. The blazer belonged to Appellant.

Ms. Fitts eventually identified Appellant as the driver in the kidnapping.[1] Appellant concedes that he was the owner of the getaway blazer, and that it was subsequently burnt. (**See** Appellant's Brief, at 5). Appellant first agreed to turn himself in to the police with his lawyer, but fled instead. He was captured by the fugitive squad a year later.

---

[1] Ms. Fitts and Ms. Lunsford independently identified Appellant. Both testified they had seen him briefly remove his mask. Ms. Fitts had initially identified someone else, John Brazella, as the getaway driver. Police led Ms. Fitts to Brazella because the vehicle he owned resembled the description of the getaway van. (**See** Commonwealth's Brief, at 14). Appellant was eventually identified as the owner of the getaway vehicle. Ms. Fitts identified him as the kidnap driver from a photo array.

At trial, defense counsel cross-examined Ms. Fitts on her earlier identification of Brazella and her subsequent identification of Appellant. Ms. Lunsford also identified Appellant. Appellant testified in his own defense, denying any involvement in the kidnap or murder. (*See* N.T. Trial, 2/08/05, at 487). He admitted ownership of the Chevy blazer (conceding that he did not have a driver's license), but claimed it had been stolen on the day of the kidnapping, shortly before it was burned.

A jury convicted Appellant of murder of the second degree, kidnapping, burglary, robbery and conspiracy. The trial court imposed the mandatory sentence of life imprisonment for the murder and a concurrent term of not less than ten nor more than twenty years' imprisonment for the criminal conspiracy conviction.

After Appellant's direct appeal rights were reinstated *nunc pro tunc*, this Court affirmed the judgment of sentence on direct appeal and our Supreme Court denied allowance of appeal. (*See Commonwealth v. J. Smith*, NO. 1915 WDA 2005 (unpublished memorandum) (Pa. Super. filed March 12, 2008), *appeal denied*, 990 A.2d 729 (Pa. 2010)).

Appellant filed the instant petition for PCRA relief, on July 2, 2010. The court appointed counsel, who filed an amended petition. The PCRA court filed notice of its intent to dismiss on January 31, 2012. While still represented, Appellant filed objections and a premature *pro se* notice of

appeal. The court held a ***Grazier*** hearing,[2] and found Appellant's waiver of counsel to be knowing, voluntary and intelligent; it granted him leave to represent himself on appeal. The court issued a final order, and Appellant filed another notice of appeal.[3]

Appellant raises six questions for our review.[4]

> 1. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to file a motion to suppress Lakeenah Fitts['] identification of Appellant and protecting his rights under the 6[th] and 14[th] amendments to the U.S. Const [sic] & Art [sic] 1 § 9 of the PA Const [sic]?
>
> 2. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to object when the judge sealed five jury questions about the facts of the case during their premature jury deliberations and protect Appellant['[s rights to a fair and impartial jury guaranteed under the 6[th] & 14[th] Amendments to the U.S. Const [sic] and Art [sic] 1 § 9 of the PA Const [sic]?
>
> 3. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to object to a faulty, confusing and misleading jury instruction relating to murder and protect Appellant['[s 6[th] & 14[th] Amendment rights to the U.S. Const [sic] and Art [sic] 1 § 9 of the PA Const [sic]?
>
> 5. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to recall alibi

_____

[2] ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[3] Appellant filed three concise statements of error. (***See*** Commonwealth's Brief, at 25); ***see also*** Pa.R.A.P. 1925(b). The trial court filed a statement of reasons (dated 2/5/14), on February 11, 2014. ***See*** Pa.R.A.P. 1925(a).

[4] We reproduce the questions in Appellant's original order of presentation, and as manually re-numbered by him.

witness in surrebuttal and failing to object to the prosecutor[']s repeated highlighted references to defendant invoking his rights under the Fifth and Sixth Amendment to the U.S. Const [sic] and Art [sic] 1 § 9 of the PA Const [sic]?

4. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to request a **Franks** hearing to challenge the information provided in the affidavit of probable cause to arrest and the veracity of the affiant(s) signed thereto when it was obvious that material facts were omitted and deliberate falsification of material facts were present in the affidavit violating his right to the 4th and 6th Amendment to the U.S. Const [sic] and Art [sic]1 § 9 of the PA Const [sic]?

6. Did PCRA counsel fail to raise a [sic] issue of merit where trial counsel was ineffective for failing to object to the reference of Appellant in nontestifying codefendent[']s statement and where the prosecutor unredacted the codefendant[']s statement in her closing argument violating his 6th & 14th Amendment to the U.S. Const [sic]and Art [sic] 1 § 9 of the PA Const [sic]?

(Appellant's Brief, at iv).

Our standard and scope of review for the denial of a PCRA petition is well-settled:

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

**Commonwealth v. Charleston**, 94 A.3d 1012, 1018-19 (Pa. Super. 2014)

(citation omitted).

- 5 -

Preliminarily, on review, we conclude that Appellant's *pro se* brief substantially fails to comply with our rules of appellate procedure.[5] Pennsylvania Rule of Appellate Procedure 2135 requires, in pertinent part, that "[u]nless otherwise prescribed by an appellate court . . . a principal brief shall not exceed 14,000 words." Pa.R.A.P. 2135(a)(1). "A principal brief that does not exceed 30 pages when produced by a word processor or typewriter shall be deemed to meet the limitations in paragraph (a)(1)." Pa.R.A.P. 2135(d). However, Appellant's brief, exclusive of supplementary materials, exceeds 112 pages, well over three times the maximum page limit.

The Commonwealth estimates the word count of Appellant's brief to be about 28,000 words, or twice the prescribed limit. (**See** Commonwealth Petition to Strike Non-Conforming Brief, at 2 ¶ 2). Our independent calculation produces a result of 50,710 words, well over three and a half times the maximum word limit. In any event, Appellant provides no certification that his brief complies with the word count limits. **See** Pa.R.A.P. 2135(d).

Furthermore, the excessive length of Appellant's argument is accompanied by a lack of focus on legal issues or adherence to basic

_____

[5] On July 14, 2014, the Commonwealth filed a petition to strike Appellant's non-conforming brief. That petition was deferred to this panel. (**See** Order, 7/17/14, *per curiam*).

standards for argument on appeal. Appellant relies instead on an unduly

rambling, unfocused and often transparently self-serving statement-oriented

narrative. Appellant frequently editorializes or speculates about inferences

or conclusions, and continually assumes facts without reference to the

record.[6] This prevents meaningful appellate review.

While Appellant makes occasional efforts to cite to the record or

caselaw presumed to be pertinent, he employs this procedure so

_____

[6] For example, in support of his first argument, Appellant states:

> "Fitts['] overall testimony was highly erratic, unclear and often contradictory. Due to her prior identification of Brazell [sic] police chose to employ an unduly suggestive process in order to influence her to identify [Appellant] during the out-of-court photo array. Ultimately, due to the improper conduct of the police, [Appellant's] due process rights were violated. **Perry v. New Hampshire**, 132 S. Ct. 716, [ ] (2012) ("As the United Sates Supreme Court's case law makes clear, what triggers the due process concerns about eyewitness identification testimony is police use of an unnecessarily suggestive identification procedure to be suggestive.") [sic]. (Appellant's Brief, at 4).

> In the sole citation for these assorted claims, Appellant misquotes **Perry**, which actually states: "As our case law makes clear, what triggers due process concerns is police use of an unnecessarily suggestive identification procedure, whether or not they intended the arranged procedure to be suggestive." **Perry**, at 721 n.1.

> In any event, Appellant misapprehends the import of **Perry**, which held "that the Due Process Clause does **not** require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement." **Id.** at 730 (emphasis added). The Supreme Court affirmed Perry's conviction. **See id.**

- 7 -

inconsistently and erratically that it is generally impossible to ascertain the basis of his argument or whether there is evidence of record to support it. This, too, prevents meaningful review.

Appellant's *pro se* brief substantially violates other rules as well. For example, in Appellant's fourth (manually re-numbered as his fifth) question, he raises two distinct issues in one question, in violation of Pa.R.A.P. 2116, and 2119(a).

This court has traditionally been liberal in its review of *pro se* filings, and frequently overlooks incidental deviations from procedural requirements in the interest of justice and judicial economy. ***See Commonwealth v. Lyons***, 833 A.2d 245, 252 (Pa. Super. 2003), *appeal denied*, 879 A.2d 782 (Pa. 2005). However, this indulgence has usually been accompanied by a cautionary note:

> As a prefatory matter, although this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court. This Court may quash or dismiss an appeal if an appellant fails to conform with the requirements set forth in the Pennsylvania Rules of Appellate Procedure.

(***Id.*** at 251-52 (case citation omitted)). "[A]ny person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." ***Wilkins v. Marsico***, 903 A.2d 1281, 1285 (Pa. Super. 2006), *appeal denied*, 918 A.2d

747 (Pa. 2007) (citing **Commonwealth v. Rivera**, 685 A.2d 1011[, 1013] (Pa. Super. 1996)).  This Court has also decided:

> [F]or all those who may come henceforth in the garb of "*in forma pauperis*" or *pro se,* justice will not be skewed for such litigants, but, on the contrary, will be meted out even-handedly to those who exhibit at least a modicum of effort in following the prescribed rules of conduct in appellate practice.
>
> This is not the case here, and we can decipher no rule of conscience or law which advises in favor of addressing the merits of the appellant's appeal in the face of the procedural shortcomings pervading his brief to us.

**Laird v. Ely & Bernard**, 528 A.2d 1379, 1380-81 (Pa. Super. 1987), *appeal denied*, 549 A.2d 136 (Pa. 1988).  **See also Commonwealth v. Spuck**, 86 A.3d 870, 877 (Pa. Super. 2014), *appeal denied*, 99 A.3d 77 (Pa. 2014) (citing **Laird**) (finding all issues waived for failure to comply with appellate briefing rules; appeal quashed).

Furthermore, it is improper for this Court to make an argument for an appellant, or to scour the record to find evidence to support his argument. **See Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2009) (deeming unsupported issue waived).[7]

---

[7] **See also Commonwealth v. Gray**, 608 A.2d 534, 544 n.15 (Pa. Super. 1992):

> We cannot stress strongly enough in this case our displeasure with appellate counsel's failure to follow our

*(Footnote Continued Next Page)*

This Court need not dissipate limited judicial resources in an effort to convert Appellant's assorted attacks on the reliability of the witnesses' identifications, or the purported unreliability of eyewitness identification evidence in general, into a cognizable claim for collateral relief.

In fact, Appellant's various challenges to purported inconsistencies in the testimony—while occasionally framed (but not properly argued) as claims of ineffectiveness of counsel—are in actuality invitations to this Court to re-weigh the evidence already considered by the jury. We decline. It was the province of the jury as fact-finder to weigh the evidence and to accept all, part or none of it. Finally, on our review, none of Appellant's other questions present a cognizable claim for collateral relief.

Appellant substantially disregards our procedural rules. His defective brief does not enable meaningful review. He presents no proper discernible claim for collateral relief.

Appeal quashed.

_(Footnote Continued)_ ————————————

Supreme Court's appellate rules which require specific reference to places in the record where facts and legal arguments pertinent to appellant's claims can be found. . . . [W]e are not speaking of a small number of cases which would allow us to scour the records in each case despite an appellate counsel's failure to abide by the rules. If litigants freely ignore proper procedure, what purpose do the rules serve?

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/21/2014