J-S89009-16

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS EDWARDS, | |
| Appellant | No. 1 EDA 2016 |

Appeal from the PCRA Order December 11, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003642-2008

BEFORE: SHOGAN, MOULTON, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 05, 2017**

Appellant, Thomas Edwards, appeals from the order entered December 11, 2015, denying his petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the procedural and factual history of this case as follows:

> On November 13, 2009, following a jury trial . . . ,[1] [Appellant] was found guilty of murder of the first degree (H-1) and criminal conspiracy (F-1).[2] Sentencing was deferred until November 24, 2009, at which time [Appellant] was sentenced to the mandatory term[3] of life in prison.[4] On December 3, 2009, [Appellant] filed post-sentence motions, which were denied by [the trial court] on April 1, 2010. On August 17, 2011, the Superior Court affirmed [Appellant's] judgment of sentence.[5]

---

[*] Former Justice specially assigned to the Superior Court.

[1]   At trial, [Appellant] was represented by Robert Gamburg, Esquire.  [Appellant] was tried with a co-defendant, Terrence Snead, who was also found guilty by the jury of first-degree murder and criminal conspiracy.  CP-51-CR-0003643-2008.

[2]   18 Pa.C.S. §§ 2502(a) and 903, respectively. [Appellant] was found not guilty of the charge of abuse of a corpse.

[3]  18 Pa.C.S. § 1102(a).

[4]  As to the charge of criminal conspiracy, [Appellant] was sentenced to a consecutive term of not less than ten nor more than twenty years in prison.

[5]  Commonwealth v. Thomas Edwards, No. 1174 EDA 2010, slip op. (Pa. Super., Aug. 17, 2011) (memorandum opinion).  Matthew Wolfe, Esquire[,] represented [Appellant] on appeal.

On July 2, 2012, [Appellant] filed a *pro se* petition pursuant to the [PCRA], requesting reinstatement of his appellate rights *nunc pro tunc*.  Thereafter, following a hearing, on September 10, 2012, [the PCRA court] reinstated [Appellant's] right to petition for allowance of appeal *nunc pro tunc* in our Supreme Court.  On March 6, 2013, [Appellant's] petition for allowance of appeal was denied.[7]

[7]  Commonwealth v. Edwards, No. 478 EAL 2012, slip op. (Pa. March 6, 2013).

On July 9, 2013, [Appellant] filed his first substantive PCRA petition, *pro se*.  Counsel was appointed[8] and filed an amended petition on December 17, 2014.[9]  The Commonwealth filed a motion to dismiss on July 3, 2015.  Having reviewed the pleadings and petitioner's file, on November 9, 2015, [the PCRA court] sent petitioner notice of its intent to deny and dismiss his claims without a hearing, pursuant to Pa.R.Crim.P. 907 (907 Notice).  [The PCRA court] dismissed [Appellant's] PCRA petition consistent with its 907 Notice on December 11, 2015.  This timely appeal followed.

8    Barnaby Wittels, Esquire, was appointed to represent [Appellant] on collateral attack.

9    In his amended petition, PCRA counsel represented that he would be making an additional filing: "Undersigned counsel will file a Second or Supplemental Amended Petition prior to the next compliance date together with a memorandum of law addressing all issues to be raised in Petitioner's PCRA proceeding." Amended Petition, 12/17/14 at 5. This Court gave PCRA counsel until October 2, 2015 to make any additional filings; however, PCRA counsel informed this Court on November 6, 2015 that he would not be filing anything further.

**FACTS:**

In the early morning hours of April 28, 2006, the body of Terrence Hawkins (victim) was discovered by police at 3036 Harper Street, a dead-end street in the Fairmount section of Philadelphia. The victim had been strangled to death, and his body had been wrapped in large, black plastic garbage bags, doused in gasoline, and set on fire.

At the time of his death, the victim was working at Savanna's Restaurant and living with Terrence Snead (co-defendant) in a rented house at 3030 Fontaine Street. The victim had been living with the co-defendant for approximately one year. A few days before the victim's death, the co-defendant became upset when he noticed that several items were missing from his bedroom, including his watch, money, cocaine, and a gun belonging to a friend, Dimitri Lambert. A few days later, on the day the victim was murdered, the co-defendant called Dimitri Lambert to come to 3030 Fontaine Street to discuss the missing items. When Dimitri Lambert arrived at the house, the co-defendant and two other men, Jermaine Rippy and Khalil Rippy, were questioning several people, including the victim, about the missing items and whether they knew who took them. [Appellant] who had been friends with the co-defendant for years, arrived during the questioning and joined in. Eventually, Dimitri Lambert was permitted to leave, at which point [Appellant], the co-defendant, Jermaine Rippy, Khalil Rippy, and the victim were together in the

basement. As he left the house, Dimitri Lambert heard "slight yelling" from a voice he thought was the victim's.

[Appellant] and co-defendant were then told that the victim had been one of the last people in the house before the items went missing from the co-defendant's room. At this point, the co-defendant began "kicking, punching, and smacking" the victim. [Appellant] was going to shoot the victim, but the co-defendant told him not to, took the wire out of a lamp, and put a sock around his hand. Jermaine Rippy recalled that "[Appellant] started hitting [victim] in the head with the gun. He was tempted to shoot him, but the co-defendant told him no. He was going to do it another way. [Co-defendant] pulled a wire off a lamp in the basement. He put a sock around his hand and started talking to [victim]." The co-defendant began to strangle the victim, at which point Jermaine Rippy left the basement.[11] Jermaine Rippy went to the first floor of the house, and after a short while he saw the co-defendant exit the basement and retrieve some garbage bags.[12] The co-defendant was wearing socks on his hands, and was covered in what looked like vomit. [Appellant] remained in the basement.

[11] The Medical Examiner testified that the cause of death was strangulation accomplished by placing an object around the neck, for example, a rope or cord, and tightening it for an uninterrupted period of three to five minutes.

[12] Jermaine Rippy described the bags as "big heavy-duty bags . . . like real thick type of bags."

The victim's body was discovered ablaze a short time later at 3036 Harper Street, an abandoned house approximately ten blocks from Fontaine Street. A white sedan was seen pulling away from the house at which the body was found, immediately after the fire was set. The co-defendant drove a white Crown Victoria sedan at the time of the murder.[13] Police seized the Crown Victoria sedan and discovered large, black plastic garbage bags in the car's trunk.[14]

[13] The white Crown Victoria was not registered in the co-defendant's name; however, he was seen driving the car by several witnesses, and had received two traffic citations while driving the car.

- 4 -

14 These garbage bags were described by a Crime Scene Investigator as "contractor" garbage bags, which are larger than standard garbage bags.

Two days after the victim was killed, his mother and sister went to 3030 Fontaine Street to collect his personal effects, at which point the co-defendant told them that he had not seen the victim since Wednesday, two days *before* he was killed. When the victim's family entered his bedroom it had been "emptied out like he never lived there." The victim also kept a closet in the home's dining room, and the victim's family collected his clothing from that closet. When the victim's family asked for something to put the clothes in, the co-defendant gave them some large, black plastic garbage bags. The victim's sister later gave police the large garbage bags filled with the victim's clothes.[15]

15 Police determined the bags to be "large, contractor-type trash bags."

Police conducted interviews with the victim's co-workers, who informed them that Dimitri Lambert and Jermaine Rippy were friends of the victim. Police located both men, and each individually told police that [Appellant] and co-defendant had committed the murder. A latent fingerprint, lifted from an additional black garbage bag near where the victim's body was found, matched [Appellant's] fingerprint.

PCRA Court Opinion, 3/29/16 at 1-5 (internal citations and some footnotes omitted) (emphasis in original).

Appellant presents the following issue for our review: "Did the PCRA court err in not granting an evidentiary hearing?" Appellant's Brief at 6 (full capitalization omitted).

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be

disturbed unless there is no support for the findings in the certified record. *Id*.

The right to an evidentiary hearing on a post-conviction petition is not absolute. ***Commonwealth v. Jordan***, 772 A.2d 1011, 1014 (Pa. Super. 2001). It is well established that "[t]he PCRA court need not hold a hearing on every issue appellant raises, as a hearing is only required on genuine issues of material fact." ***Commonwealth v. Albrecht***, 994 A.2d 1091, 1093 (Pa. 2010) (citations and quotations omitted). "A trial court's decision not to hold a hearing will only be reversed when the trial court abused its discretion." ***Commonwealth v. Collins***, 888 A.2d 564, 579 (Pa. 2005).

Before addressing the merits of Appellant's issue, we note that inexplicably, the majority of the argument section of Appellant's brief sets forth case law pertaining to claims of ineffective assistance of counsel, despite there being no such issue before this Court. Appellant's Brief at 14-16. The remainder of the argument sets forth only case law regarding evidentiary hearings in PCRA proceedings; there is no analysis applying that law to the facts of this particular case. Specifically, there is no reference to the record and no synopsis of the evidence, as is required by Pa.R.A.P. 2119. In fact, Appellant fails to present any argument as to why he believes he was entitled to an evidentiary hearing in this case. Appellant's Brief at 13-18.

"The failure to develop an adequate argument in an appellate brief may result in waiver of the claim under Pa.R.A.P. 2119." **Commonwealth v. Beshore**, 916 A.2d 1128, 1140 (Pa. Super. 2007) (internal citation and quotation marks omitted). Because Appellant fails to develop any meaningful legal argument, we hold that his issue is waived. **See Commonwealth v. Freeman**, 128 A.3d 1231, 1249 (Pa. Super. 2015) (explaining that the appellant "ha[d] made no effort whatsoever to discuss the applicable law or link the facts of his case to that law" and concluding that "[h]is failure to develop a coherent legal argument in support of his claim results in waiver of [the] issue"); **Beshore**, 916 A.2d at 1140 (finding waiver where appellant presented no argument explaining how he was affected by a statutory provision and included no citation to the record to support his argument, and wherein the Court stated its refusal to develop an argument for the appellant or scour the record for evidence); **Commonwealth v. Hakala**, 900 A.2d 404, 407 (Pa. Super. 2006) (finding waiver where the appellant "fail[ed] to offer either analysis or case citation in support of the relief he seeks" and admonishing that "it is not this Court's function or duty to become an advocate for the [appellant]").

Assuming *arguendo* that this issue is not waived, we would affirm on the basis of the PCRA court opinion. Although Appellant's brief fails to clearly define an argument, Appellant asserts the following in his Pa.R.A.P. 1925(b) statement:

The [c]ourt erred in not granting an evidentiary hearing in a matter wherein Appellant had made a prima facie showing of new evidence. While the evidence was from a witness who had testified at trial, the new evidence was the recanted statement and proposed testimony of the witness Jermaine Rippy. The recantation of Mr. Rippy was timely submitted to the court and therefore, being timely, merited an evidentiary hearing.

Pa.R.A.P. 1925(b), 1/7/15, at 1. Appellant also set forth this claim in his PCRA petition, wherein he stated:

Petitioner asserts that he is entitled to relief as newly discovered evidence that was unavailable at the time of trial, in the form of ballistics evidence, provides exculpatory evidence that would have changed the outcome of the trial. That exculpatory evidence is in the form of an affidavit from the witness Jermaine Rippy attached hereto as Exhibit A. Petitioner asserts that Mr. Rippy has recanted his trial testimony as per the attached affidavit in which Mr. Rippy asserts the assigned homicide Detective, Kenneth Rossiter coerced his statement and trial testimony.

Amended PCRA petition, 12/17/14, at ¶ 20 (emphasis in original). Accordingly, the PCRA court addressed that issue in its Pa.R.A.P. 1925(a) opinion.

The PCRA court opinion thoroughly and accurately explains why the information contained in Jermaine Rippy's post-trial affidavit does not constitute after-discovered evidence. In sum, at the 2009 trial, Mr. Rippy recanted the statement he had previously made to police and at the preliminary hearing. The affidavit merely reiterated the recantation testimony that was provided at trial. Because no material issue of fact was raised, Appellant was not entitled to an evidentiary hearing. PCRA Court Opinion, 3/29/16, at 5-7. Accordingly, were we to consider the issue, we

would conclude that the PCRA court properly dismissed Appellant's PCRA petition without conducting an evidentiary hearing.

Order affirmed.

Judge Moulton joins the Memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2017