J-A14044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF N.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: C.F., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 4095 EDA 2017 |

Appeal from the Decree Entered November 9, 2017
in the Court of Common Pleas of Monroe County
Orphans' Court at No.:  50 OCA 2017

BEFORE:   GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY PLATT, J.:                   **FILED AUGUST 07, 2018**

C.F. (Father) appeals from the decree of the Court of Common Pleas of Monroe County (trial court), entered November 9, 2017, which involuntarily terminated his parental rights to his daughter, N.F. (Child) (born in July 2008). We affirm.

S.W. (Mother) and Father separated in November of 2010.[1]  The trial court entered a number of custody orders from then through April 21, 2011, when the trial court granted Mother sole physical custody of Child and limited Father's partial custody to supervised visitation.  (**See** N.T. Hearing, 10/31/17, at 7-8).  Father availed himself of some supervised periods of partial custody through March of 2012, when he was arrested and incarcerated

_____

[1]  The parties subsequently divorced and Mother has re-married.

_____

*   Retired Senior Judge assigned to the Superior Court.

for a period of six months. (*See id.* at 8).[2] Mother did not hear from Father during this period of incarceration, nor did she hear from him upon his release. (*See id.* at 9-10).

At all times prior to and through the date of Father's release from prison, Mother lived at an address in Greentown, Pennsylvania, and maintained the same telephone number; Father knew both the address and phone number. (*See id.* at 7-9).

Father filed to modify his support obligation between 2012 and 2014. The trial court terminated his support order in 2014. (*See id.* at 10-11). At no time, however, did Father file anything in his custody case, nor did he resume visitation with Child following his release from prison.

In October of 2014, some two years after Father's release from prison, Mother moved to Fort Bragg, North Carolina. Father had still not made any effort to contact Child, despite the fact that Mother maintained the same address and telephone number. During the two years between Father's release from prison and Mother's move to North Carolina, Father did not call or send a letter to Child, did not acknowledge Child's birthday, did not send Child a gift, nor did anyone in Father's family have any contact and/or communication with Child. (*See id.* at 13-14).

---

[2] Our review of the record reveals that Father's short period of incarceration was not a material contributing factor to his failure or refusal to perform his parental duties.

Mother maintained the same phone number when she moved to North Carolina, and, since that time, has received approximately three text messages from Father. (**See id.** at 16-17). The last message that she received from Father concerning Child was sent in January 2016. (**See id.** at 17). There was no contact between Father and Child from March of 2012 through the date of the termination hearing. At the termination hearing, Child had no recollection or knowledge of Father. (**See id.** at 19, 106-07).

Mother filed her petition to terminate Father's parental rights involuntarily on June 28, 2017. The trial court held a hearing on that petition on October 31, 2017, at which a guardian *ad litem* represented Child.[3] Mother, Father, Child's stepfather, J.W., and Child testified at that hearing.[4] The trial

---

[3] This Court has recently held that we will address *sua sponte* the orphans' court's responsibility to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a). **See In re K.J.H.**, 180 A.3d 411, 413 (Pa. Super. 2018). Our Supreme Court, in **In re Adoption of L.B.M.**, 161 A.3d 172, 180 (Pa. 2017) (plurality), held that Section 2313(a) requires that counsel be appointed to represent the legal interests of any child involved in a contested involuntary termination proceeding. The Court defined a child's legal interest as synonymous with his or her preferred outcome. The **L.B.M.** Court did not overrule this Court's holding in **In re K.M.**, 53 A.3d 781 (Pa. Super. 2012), that a guardian *ad litem* who is an attorney may act as counsel pursuant to Section 2313(a), so long as the dual roles do not create a conflict between the child's best interest and legal interest. **See In re K.M.**, **supra** at 787-88. In this case, the trial court appointed attorney Megan Reaser, Esquire, to act as Child's guardian *ad litem*. Our review of the record in this matter leaves us with no doubt that Child's preferred outcome is to be adopted by her stepfather. (**See** N.T. Hearing, at 106-07). Therefore, we conclude that the trial court fulfilled its responsibility to appoint counsel pursuant to 23 Pa.C.S.A. § 2313(a).

[4] Child testified *in camera*, with counsel present, but without the parties.

court entered its decree terminating Father's parental rights on November 9, 2017. Father filed his timely notice of appeal and concise statement of errors complained of on appeal on December 11, 2017.[5]

Father presents the following issue for our determination: "Whether the [trial court] abused its discretion and/or committed an error of law in terminating Father's parental rights pursuant to 2511(a)(1), (2), (5) and (8) and 2511(b) of the Adoption Act[?]" (Father's Brief, at unnumbered page 2).

Our standard of review in the termination of parental rights is as follows:

In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Here, the trial court terminated Father's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). In order to affirm the termination of parental rights, this Court need only agree with any one subsection of Section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.A. § 2511, which provides, in pertinent part:

---

[5] December 9, 2017 was a Saturday. Thus, Father's notice of appeal, filed the following Monday, was timely.

**§ 2511. Grounds for involuntary termination**

>   **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
>   \*   \*   \*
>
>   (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
>   \*   \*   \*
>
>   **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. §§ 2511(a)(1) and (b).

To terminate parental rights pursuant to section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform parental duties. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

With respect to subsection 2511(a)(1), our Supreme Court has held:

- 5 -

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 92 (Pa. 1998)

(citation omitted). Further,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re N.M.B.*, 856 A.2d 847, 854-55 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (citations omitted).

It is well settled that a party seeking termination of a parent's rights bears the burden of proving the grounds to so do by "clear and convincing evidence," a standard which requires evidence that is "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re T.F.*, 847 A.2d 738, 742 (Pa. Super. 2004) (citation omitted). Further,

A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In the Interest of K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The Adoption Act provides that a trial court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b). The Act does not make specific reference to an evaluation of the bond between parent and child but our case law requires the evaluation of any such bond. *See In re E.M.*, 620 A.2d 481, 484 (Pa. 1993). However, this Court has held that the trial court is not required by statute or precedent to order a formal bonding evaluation performed by an expert. *See In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008).

Before we begin our analysis, we must address the shortcomings of Father's brief. Father begins the argument section of his brief with citations to cases that support the general principles of law that guide this Court in analyzing the termination of parental rights. (*See* Father's Brief, at unnumbered pages 6-7). Father then states, "Based on the facts set forth above, the trial court's conclusion that termination of parental rights was appropriate was unreasonable, requiring this Court to reverse the decision concerning termination." (*Id.* at unnumbered page 7). This is Father's entire argument. Father does not apply the law he cites to the facts of the case to develop a legal argument that supports his claim that the trial court abused its discretion when it terminated his parental rights. In sum, Father does not attempt to develop a coherent legal argument to support his conclusion that

the trial court erred in terminating his parental rights. Therefore, he has waived his argument. "The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119." *Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007), *appeal denied*, 982 A.2d 509 (Pa. 2007) (citation and internal quotation marks omitted); *see Chapman-Rolle v. Rolle*, 893 A.2d 770, 774 (Pa. Super. 2006) ("It is well settled that a failure to argue and to cite any authority supporting an argument constitutes a waiver of issues on appeal") (citation omitted).

Moreover, Father's issue would not merit relief. Father clearly refused or failed to perform his parental duties. He made no effort to contact Child or to inquire about Child since his incarceration in 2013, even though he knew Mother's phone number and, until she moved to North Carolina, her address. In spite of the custody order in place in this matter, Father did not attempt to enforce his right to visitation with Child after his release from incarceration. The record before us contains sufficient credible evidence to support the trial court's finding that Father's conduct demonstrated a settled purpose to relinquish his parental rights, and it's decision to terminate Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1). *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

Furthermore, we conclude that the termination of Father's parental rights is in Child's best interest. Child has not seen Father or had any contact with Father in any form since some time in 2013. When the trial judge asked

Child if she ever remembered seeing Father before the day of the hearing, she replied, "No." (N.T. Hearing, at 107). When the trial judge asked her why she was in court that day, she replied, "So the father that I live with can adopt me and he will be my only father." (***Id.*** at 106). When asked if she looked at him as her father, she replied, "Yes." (***Id.*** at 107). Child's stepfather, J.W., testified that he is prepared to adopt Child. (***See id.*** at 54). Father is a complete stranger to Child. There is no evidence in the record that terminating Father's parental rights will have any effect on Child, no less a detrimental effect. The trial court did not abuse its discretion when it terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(b).

Accordingly, we affirm the decree of the Court of Common Pleas of Monroe County that terminated Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b).

Decree affirmed.

President Judge Gantman joins the Memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/18

- 9 -