J-S07005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WYATT NATHANIEL DETTINGER | : | |
| | : | |
| Appellant | : | No. 344 MDA 2024 |

Appeal from the Judgment of Sentence Entered February 6, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0006460-2019

BEFORE: NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 24, 2025**

Appellant Wyatt Nathaniel Dettinger appeals from the judgment of sentence imposed after he was convicted at a jury trial for first-degree murder and tampering with physical evidence.[1]  Appellant's Counsel[2] has filed a petition to withdraw and an ***Anders***/***Santiago***[3] brief.  After review, we grant the petition to withdraw and affirm Appellant's judgment of sentence.

The record reflects that on July 22, 2019, Appellant fatally shot his father (the Victim) twice with a shotgun.  ***See*** Affidavit of Prob. Cause,

---

[1] 18 Pa.C.S. § 2502(a), and 4910(1), respectively.

[2] Appellant's Counsel also represented Appellant at trial.

[3] ***Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).

7/23/19, at 1-2.  The trial court summarized the underlying facts of this case

as follows:

> At the time of the incident, [Appellant] was in his bedroom with Cheyenne Storm (his girlfriend) (N.T., 12/5/23, page 103, 108; 12/7/23, pages 510, 512);
>
> [Appellant] got mad, threw his phone at the television, then grabbed his gun and hit the television with it (N.T., 12/7/23, pages 512, 546);
>
> [Appellant] loaded the gun and said he wanted to kill himself (N.T., 12/5/23, page 109; 12/7/23, page 547);
>
> Shortly thereafter, the Victim came into the bedroom, yelled at [Appellant] to knock it off, and threatened to throw him out of the house (N.T., 12/5/23, page 203; 12/7/23, pages 561-562);
>
> The Victim left the room, closing/slamming the door behind him (N.T., 12/5/23, page 111; 12/7/23, pages 512, 563);
>
> After the Victim left the room, [Appellant] told Ms. Storm that he was going to kill [the Victim] (N.T., 12/5/23, pages 110-111);
>
> [Appellant] pointed the gun at the wall where he figured the Victim would be on the other side and pulled the trigger (N.T., 12/7/23, page 563);
>
> [Appellant] knew that pointing a gun in the direction of a path that somebody might be in that they could absolutely be hurt or even killed (N.T., 12/7/23, page 518);
>
> When the bedroom door opened, [Appellant] knew he had hit the Victim and saw [the Victim] stumbling down the hallway with a big bullet wound on his chest (N.T., 12/7/23, pages 519, 542);
>
> [Appellant] saw the Victim fall to the ground, then heard the Victim make gurgling noises (N.T., 12/7/23, pages 520, 549);
>
> [Appellant] did not like the noise the Victim was making (N.T., 12/7/23, page 564);
>
> The gun that [Appellant] used to shoot the Victim was a bolt-action firearm (N.T., 12/6/23, page 409);
>
> A bolt-action firearm means that:

> After you discharge the firearm, you need to work the bolt itself by lifting the handle up, pulling it to the rear, which will extract and eject the discharged cartridge case (N.T., 12/6/23, page 425);
>
> Each time you want to discharge the firearm, you have to place another cartridge into the chamber (N.T.,12/6/23, page 415);
>
> The cartridge is chambered into the firearm by pushing the bolt forward (N.T., 12/6/23, page 424);

After shooting the Victim the first time, [Appellant] cleared the discharged casing from the firearm (N.T., 12/7/23, page 545);

[Appellant] then chambered a second round in the firearm (N.T., 12/7/23, page 545);

[Appellant] then aimed the gun at the Victim (N.T., 12/7/23, page 545);

[Appellant] pulled the trigger a second time, hitting the Victim again (N.T., 12/7/23, pages 520-521, 543, 545-546, 550-551, 565);

[Appellant] took the gun and put it back in the gun bag (N.T., 12/7/23, page 552);

[Appellant] collected the two spent shell casings and put them in the gun bag (N.T., 12/7/23, pages 528, 551-552);

[Appellant] took the gun bag, stepped over/went around the Victim's body, and left the residence with his girlfriend in her vehicle (N.T., 12/7/23, pages 552-555);

While [Appellant] was in his girlfriend's car, he was Googling on his cellphone "how many years would you go to prison for killing someone?" (N.T., 12/6/23, pages 442-443; 12/7/23, page 555; Commonwealth's Exhibit #'s 85, 86);

[Appellant] never tried to help the Victim (N.T., 12/5/23, page 122; 12/7/23 , page 554);

[Appellant] never called 911 (N.T., 12/7/23, pages 554-555, 557); and [Appellant] told Trooper Weldon that the reason he shot the Victim a second time instead of calling 911 for help was because he was scared to go to jail (Commonwealth's Exhibit # 54, pages 34-35; Exhibit # 53).

[Appellant] claimed that he blacked out at the time, and that he did not intend to shoot the Victim.

Trial Ct. Op., 5/31/24, at 3-5 (formatting altered).

Following a jury trial, Appellant was found guilty of one count of first-degree murder and one count of tampering with physical evidence. On February 6, 2024, the trial court sentenced Appellant to a term of life without parole for the murder conviction and a concurrent term of six to twelve months of incarceration for tampering with physical evidence. *See* N.T., Sentencing, 2/6/24, at 4-5. This resulted in an aggregate sentence of a life without parole. *See id.* Appellant filed a timely appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

In the ***Anders***/***Santiago*** brief, Appellant's Counsel concluded that there were no non-frivolous issues. ***Anders***/***Santiago*** Brief at 11. "When faced with a purported ***Anders***[/***Santiago***] brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw." ***Commonwealth v. Wimbush***, 951 A.2d 379, 382 (Pa. Super. 2008) (citation omitted). Counsel must comply with the technical requirements for petitioning to withdraw by (1) filing a petition for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) providing a copy of the brief to the appellant; and (3) advising the appellant of the right to retain private counsel, proceed *pro se*, or raise additional arguments that the appellant considers worthy of the court's attention. ***See Commonwealth***

- 4 -

*v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). In an *Anders*/*Santiago* brief, counsel must set forth the issues that the defendant wishes to raise and any other claims necessary to effectuate appellate presentation of those issues. *Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa. Super. 2005).

Additionally, counsel must file a brief that meets the requirements established in *Santiago*, namely:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Goodwin*, 928 A.2d at 291 (citation omitted). This includes "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citation and footnote omitted); *accord Commonwealth v. Yorgey*, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*).

- 5 -

Here, Appellant's Counsel has complied with the procedural requirements for seeking withdrawal by filing a petition to withdraw, sending Appellant a letter explaining his appellate rights, informing Appellant of his right to proceed *pro se* or with private counsel, and supplying Appellant with a copy of the **Anders**/**Santiago** brief. **See Goodwin**, 928 A.2d at 290. Appellant's Counsel also provided this Court with a copy of his letter to Appellant informing him of his rights. Moreover, Appellant's Counsel's **Anders**/**Santiago** brief complies with the requirements of **Santiago**, and the brief includes a summary of the relevant factual and procedural history, refers to the portions of the record that could arguably support Appellant's claim, and sets forth the conclusion that the appeal is frivolous. **See Santiago**, 978 A.2d at 361. Accordingly, we conclude that Appellant's Counsel has met the technical requirements of **Anders** and **Santiago**, and we will address the issues identified in the **Anders**/**Santiago** brief.

In the **Anders**/**Santiago** brief, Appellant's Counsel identifies the following issues:

1. Did the trial court abuse its discretion when it sustained the Commonwealth's objections to Appellant's cross[-]examination questions regarding . . . Appellant's historical relationship with his father?

2. Did the trial court abuse its discretion when it ruled that . . . Appellant's two proposed fact witnesses whose proffered testimony was that Appellant's father humiliated him routinely in front of his friends was irrelevant?

**Anders**/**Santiago** Brief at 4 (formatting altered).

- 6 -

Both of these issues challenge evidentiary rulings, and our standard of review is as follows:

> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

*Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citations and quotation marks omitted). An abuse of discretion "is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that was manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (citations omitted).

The first issue in the *Anders*/*Santiago* brief concerns the trial court's rulings with respect to the Commonwealth's objections during Appellant's cross-examination of witnesses Cheyenne Storm and Laura Zook.[4] *See Anders*/*Santiago* Brief at 12." The trial court addressed this issue as follows:

> [Appellant] contends that "[he] sought to elicit testimony from Cheyenne Storm and L[ora] Zook regarding the relationship between the [Appellant] and his father and specific instances which would demonstrate the cumulative nature of the provocations along with his reactions to those provocations, which ultimately led to [Appellant's] intense passion. Again, this is

_____

[4] These witnesses were not identified by name in the *Anders*/*Santiago* brief. However, Appellant did include the names of the witnesses in his Rule 1925(b) statement. *See* Rule 1925(b) Statement, 4/26/24, at 2 (unpaginated).

nothing more than a bald assertion, as [Appellant] fails to cite to the transcript and indicate specifically what objections he is referring to. As a result, this contention is without merit.

Moreover, in regard to Cheyenne Storm, there was one question on cross-examination that was objected to by the Commonwealth because the question sought to elicit hearsay testimony in regard to what the Victim said to Ms. Storm at a prior party. (N.T., 12/5/23, page 156). [Appellant's] Counsel could not reference an appropriate exception to hearsay that would allow the response to be admissible, so the trial court properly sustained the objection. (N.T., 12/5/23, pages 156-158).

In regard to Lora Zook, [Appellant's] Counsel did elicit testimony from Ms. Zook on cross-examination regarding [Appellant's] interactions with the Victim. (*See* N.T, 12/5/23, pages 210-213, 216-217).

Trial Ct. Op., 5/31/24, at 6-7 (formatting altered).

After review, we agree with the trial court that Appellant failed to identify which evidentiary rulings he purports to challenge, and Appellant did not cite to where in the record these evidentiary rulings occurred or what objection was lodged. *See id.* at 6. It is Appellant's responsibility to provide specific citation to the place in the record where the matter referred to appears and was preserved for appeal. *See* Pa.R.A.P. 2119(c),(e). Moreover, it is not the role of this Court to act as counsel for Appellant and scour the record to support a claim of error or an abuse of discretion. *See Commonwealth v. Beshore*, 916 A.2d 1128, 1140 (Pa. Super. 2007). Accordingly, because Appellant failed to cite to where in the record the testimony and challenged objections occurred, he waived the first issue on appeal. *See Commonwealth v. Kane*, 10 A.3d 327, 333 (Pa. Super. 2010) (concluding that an issue was waived where the appellant failed to identify where in the

record the issue was preserved in violation of Pa.R.A.P. 2119(e));
***Commonwealth v. Smith***, 985 A.2d 886, 906-07 (Pa. 2009) ("by failing to
properly develop his argument, with proper citation to the record, Appellant
has waived his claim").  Further, it is well settled that a waived claim is also a
frivolous claim.  ***See Commonwealth v. Kalichak***, 943 A.2d 285, 291 (Pa.
Super. 2008) (holding that when an issue is waived, "pursuing th[e] matter
on direct appeal is frivolous").  Accordingly, Appellant is not entitled to relief
on his first issue, as it was waived and, therefore, it is frivolous.  ***See id.***

In any event, were we to reach the merits of this claim, we would
conclude that Appellant is not entitled to relief.  As the trial court noted, to
the extent that Appellant is attempting to challenge the trial court's ruling
sustaining the Commonwealth's hearsay objection to Cheyenne Storm's
testimony, the Commonwealth only objected to one question on the issue
concerning the Victim's relationship with Appellant.  ***See*** Trial Ct. Op.,
5/31/24, at 6-7 (citing N.T. 12/4-8/23, at 156).  The record reflects that
Appellant's Counsel was cross-examining Cheyenne Storm, and the following
exchange occurred:

> [Appellant's Counsel]: Do you recall telling the officers or telling
> any officers about any discussion that you might have had with
> [the Victim] at that party about [Appellant]?
>
> [The Commonwealth]:  Objection, Your Honor.
>
> THE COURT: Approach.
>
> > (whereupon, the following discussion was held on the record
> > at sidebar:)
>
> THE COURT: All right. What is the objection?

- 9 -

[The Commonwealth]:  This is all hearsay.  Your Honor[,] what is about to be testified to what [the Victim] said to Cheyenne at the party.

THE COURT: That is true. That is hearsay.

[The Commonwealth]:  Also relevance, too.  I make that objection.  I don't know where we're going with this.

[Appellant's Counsel]: So what she says is that [the Victim] tells her is that –

THE COURT: Well, before we do that, is there an exception to the hearsay rule that would allow this to come in?

[Appellant's Counsel]: Effect on the listener.

THE COURT: The listener being the witness?

[Appellant's Counsel]:  Yes.

THE COURT: How is that relevant?  I am not trying to give you a hard time here, but, number one, that is hearsay; and, number two, you just asked the effect on the listener -- well, what do you think her answer would be?

[Appellant's Counsel]:  I think that if she says that she recalls what her answer was, she told the troopers that [the Victim] told her at a party that he and [Appellant] had their ups and downs and this was in response to questions about --

THE COURT: Okay.  Let me ask you a question here.  That's what you think her response is going to be.  Why would the effect of the listener be relevant?

[Appellant's Counsel]:  Your Honor, I think I am going to probably end up playing the video and save us all from –

THE COURT:  Okay, and you can do that.  But, you know, clearly to me -- I understand this and that you would like the jury to know that [the Victim] told the witness that he and [Appellant] had their ups and downs.  You know, that's for the truth of the matter asserted.  That's not for the effect [on] the listener.  Look.  I am making sure that you understand what I believe is the case here.  Are you going to withdraw the question or move on or what do you want to do?

[Appellant's Counsel]:  Umm –

THE COURT: I am sustaining the objection. Well, really --

[Appellant's Counsel]: I will withdraw -- well, you're sustaining, so it doesn't really matter what I am doing. **I will withdraw it** for the witness purposes.

THE COURT: All right. Is that right?

[The Commonwealth]: Yes.

(whereupon, the discussion held at sidebar was concluded.)

N.T. 12/4-8/23, at 156-159 (some formatting altered and emphasis added).

Although the record reflects that the trial court sustained the Commonwealth's hearsay objection, it also demonstrates that Appellant's Counsel then withdrew the question. *Id.* at 158. Accordingly, the question at issue was no longer before the witness, and Appellant's Counsel moved on with her cross-examination. *See id.* at 159. Moreover, in the *Anders*/*Santiago* Brief, Appellant's Counsel concedes that:

The only such objection offered by the Commonwealth is one of hearsay, in response to a line of questioning appearing to illicit information regarding [the Victim's] opinion of Appellant (N.T. 12/4/2023-12/8/2023, p. 156). However, Appellant was unable to offer appropriate hearsay objection to the trial court, and **the question was ultimately withdrawn** (*Id.* at 158).

*Anders*/*Santiago* Brief at 12-13 (emphasis added). Because Appellant's Counsel withdrew the question at issue, even if Appellant had not waived this evidentiary claim on appeal, we would conclude that this claim is frivolous. *See Lopez*, 57 A.3d at 81.

Further, were we to reach the issue concerning Lora Zook's testimony,[5] we would conclude that the issue is frivolous. To the extent Appellant claims that the trial court abused its discretion sustaining a Commonwealth objection during Ms. Zook's testimony concerning the relationship between the Victim and Appellant, our review uncovered only one objection:

> [Appellant's Counsel]: And the relationship that [Appellant] and [the Victim] had, did it seem to you that they had a father/son connection?
>
> [Ms. Zook]A. No.
>
> [Appellant's Counsel]: Is that because [the Victim] never really - -
>
> [The Commonwealth]: Your Honor, I am going to object to this.
>
> THE COURT: One moment. Approach.
>
> (whereupon, the following discussion was held on the record at sidebar:)
>
> THE COURT: What's the objection?
>
> [The Commonwealth]: One, I don't see how - - I think it's speculative what about their prior relationship and how is that relevant. She's asking what their connection was and if they had a father/son connection. I think she can testify to what she observed. She indicated that she observed them say hi and bye

_____

[5] We reiterate that Appellant's claim with respect to Ms. Zook's testimony is waived because, just as with Ms. Storm's testimony, Appellant failed to identify which evidentiary rulings he purports to challenge. Nor did Appellant cite the documents, or pages in the record that included the evidentiary rulings and objections that he is challenging on appeal. It is Appellant's responsibility to provide specific citation to the place in the record where the matter referred to appears and was preserved for appeal. *See* Pa.R.A.P. 2119(c),(e). Accordingly, this issue is waived, and a claim that is waived is also frivolous. *See Kane*, 10 A.3d at 333; *Kalichak*, 943 A.2d at 291.

and that is about it. But what type of connection they had, that is speculative.

THE COURT: Response?

[Appellant's Counsel]: Your Honor, [Ms. Zook] has previously stated that [Appellant and the Victim] did not have a father/son relationship and that [the Victim] never actually spoke of [Appellant] and that [Appellant] would go in and out of the house and that bothered [Ms. Zook]. [Ms. Zook] brought it to [the Victim's] attention, and his reaction was just to ignore that.

THE COURT: Okay, so what? I'm not trying to be unkind, but what does that have to do with this case?

[Appellant's Counsel]: Your Honor, if I can share with you what my thoughts are ex-parte, I am happy to do that.

THE COURT: Well, look –

[Appellant's Counsel]: I am not trying to be a jerk, I promise.

THE COURT: Number one, the questions that you're asking I do think call for speculation. So either rephrase or move on.

[Appellant's Counsel]: I will rephrase.

THE COURT: I mean, I assume that you want the jury to know that there was some sort of strained relationship between father and son. I get that. Nobody has objected to relevancy, so I suppose I'll let you go there but rephrase.

(whereupon, the discussion held at sidebar was concluded.)

N.T. 12/4-8/23, at 211-213.

Appellant's Counsel, without objection, proceeded with her cross-examination of Ms. Zook:

[Appellant's Counsel]: . . . Did you have a normal -- when the evening meals were made, did you [Appellant, and the Victim] sit down as a group, the three of you, to eat or no?

[Ms. Zook]: No.

[Appellant's Counsel]: How did that work?

[Ms. Zook]: Usually, when I made supper, if [Appellant] was home, I would usually offer him something or I would say there's something to eat here. Half of the time he wouldn't eat.

[Appellant's Counsel]: Okay. so you and [Appellant and the Victim] didn't sit down and share meals and things like that together?

[Ms. Zook]: No.

[Appellant's Counsel]: Were you able to observe whether [the Victim] and [Appellant] spent time together?

[Ms. Zook]: No.

[Appellant's Counsel]: I'm sorry, I asked that question poorly.

[Ms. Zook]: No.

THE COURT: Rephrase the question. Just ask the question another way.

[Appellant's Counsel]: Did you see [the Victim] and [Appellant] spending time together?

[Ms. Zook]: I think like one time I did.

*Id.* at 216 (formatting altered).

After review, the record reveals that although the trial court instructed Appellant's Counsel to rephrase her question, there was no ruling that precluded Appellant's Counsel from questioning Ms. Zook about the relationship between Appellant and the Victim. *See id.* at 211-213. As stated, Appellant's Counsel did ask Ms. Zook questions about the relationship. *See id.* at 216. Accordingly, any argument that the trial court abused its discretion by sustaining Commonwealth objections with respect to Ms. Zook's testimony is not supported by the record. Therefore, even if Appellant had not waived this claim on appeal, we would conclude that there was no abuse of discretion

and that the claim is frivolous. **See Talbert**, 129 A.3d at 539; **Lopez**, 57 A.3d at 81.

The second issue identified in the **Anders**/**Santiago** brief concerns another evidentiary ruling. Specifically, that the trial court abused its discretion when it ruled that the proffered testimony from Appellant's two proposed fact witnesses, who would have testified that the victim humiliated Appellant, was not relevant. **Anders**/**Santiago** Brief at 4.

The trial court addressed this issue as follows:

[Appellant] contends . . . that the trial court abused its discretion when it ruled that his two fact witnesses whose proffered testimony was that his father humiliated him in front of his friends routinely was irrelevant. This contention is without merit.

At trial, and after [Appellant] was finished testifying, [Appellant's] Counsel indicated at sidebar that she had two brief witnesses that she was going to call to testify. (N.T., 12/7/23, pages 571-572). The Commonwealth questioned the relevance of these two witnesses based on their understanding of what the witnesses were going to testify to. (N.T., 12/7/23, page 572). According to the Commonwealth, the witnesses were going to be called to testify that:

They were at the house on prior occasions;

[Appellant] kept his gun behind the guitar case; and

They saw the Victim watching pornography.

(N.T., 12/7/23, page 572). The proffer given by [Appellant's] Counsel as to what she expected these witnesses to say was that:

[Appellant] and a female had walked into the house;

The Victim was there watching pornography;

The Victim did not acknowledge [Appellant];

One of the witnesses played X-Box all the time and [Appellant's] gun was behind the television; and

- 15 -

> Anytime the witnesses were at the house, there was no interaction or response from the Victim to [Appellant].
>
> (N.T., 12/7/23, page 573). When asked how any of that was relevant, [Appellant's] Counsel stated that it shows the Victim's indifference towards [Appellant]. (N.T., 12/7/23, page 573).
>
> * * *
>
> The trial court explained to [Appellant's] Counsel that if she could elicit evidence that is relevant from these two witnesses, the trial court would not stop her from calling them. (N.T., 12/7/23, page 576). Ultimately, however, [**Appellant's**] **Counsel made the decision not to call those two witnesses**. (N.T., 12/7/23, page 576).

Trial Ct. Op., at 7-9 (emphasis added).

As stated, the trial court did not make a ruling with respect to these witnesses. *See* N.T. 12/4-8/23, at 576. The record reflects that at sidebar, the trial court questioned Appellant's Counsel about whether the testimony from the two proposed witnesses would be relevant, but the trial court did not make a ruling or preclude the witnesses. *See id.* Rather, Appellant's Counsel made the decision not to call the witnesses. *See id.* When the sidebar was concluded and the trial resumed, Appellant's Counsel rested for the defense. *See id.* at 578. Accordingly, we conclude that this claim is frivolous as there is no ruling for this Court to review, and therefore, we cannot conclude that the trial court abused its discretion when it did not make a ruling with respect to the two proposed witnesses. *See Talbert*, 129 A.3d at 539; *Lopez*, 57 A.3d at 81.

Further, our independent review of the record does not reveal any additional, non-frivolous issues on direct appeal. *See Flowers*, 113 A.3d at

1250; **see also Goodwin**, 928 A.2d at 291. For these reasons, we grant counsel's petition to withdraw, and we affirm the judgment of sentence.

Judgment of sentence affirmed. Counsel's petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/24/2025